SALYERS AUTO COMPANY, APPELLEE, V. FRED DEVORE, APPELLANT.

FILED DECEMBER 24, 1927. No. 25090.

*Slama & Donata,* for appellant.

*Wayne E. Sawtell* and *Grover C. Rinehart, contra.*

Heard before ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

EBERLY, J.

On December 1, 1923, Salyers Auto Company, plaintiff, brought this action in the district court for Douglas county, Nebraska, against Fred DeVore. The action was based on an order of court dated April 7, 1923, directing DeVore, as garnishee in an action entitled Salyers Auto Company v. J. R. Walker, to pay into court $1,916.83, the same to be held by the clerk until further order.

DeVore failed to comply with the order and, in conformity to our practice, plaintiff brought the present action. A jury was waived and trial had to the court, resulting in a finding that the plaintiff was entitled to recover from the defendant, DeVore, $1,510.22, with interest thereon

at 7 per cent. from April 7, 1923, to June 27, 1925, amounting to the sum of $1,743.67, for which the plaintiff was awarded judgment. From this judgment defendant has appealed.

It appears that on February 17, 1921, the assignors of plaintiff obtained a judgment in the district court for Mills county, Iowa, against J. R. Walker for $1,575, drawing interest at the rate of 8 per cent. from date of judgment. On June 19, 1922, plaintiff, as the owner of this judgment, commenced an action thereon in the district court for Douglas county, Nebraska, against J. R. Walker, and caused an attachment to be issued in said action, and in aid thereof garnishment was served on DeVore. Walker was a nonresident of the state, and service was had upon him by publication only in the manner provided by our statute. He made no personal appearance in this action above named, nor did he, in any manner, personally appear in the present proceeding.

The garnishment notice was served on DeVore June 24, 1922, and directed him to appear in court on July 11, 1922, to answer the summons in garnishment. On July 8, 1922, the garnishee filed a written answer which disclosed that he was not indebted in any sum to Walker. Apparently this answer was not satisfactory, as the record shows that the garnishee appeared personally in court on July 11, 1922, and was examined under oath by counsel for plaintiff. The record also shows that further hearing of the examination of the garnishee was continued until April 7, 1923, at which time the garnishee was further examined, resulting in an order of court directing the garnishee to pay to the clerk of the court $1,916.83, the same to be held by the clerk until order of the court.

The record shows that DeVore was conducting a stock newspaper largely devoted to the advertising of dealers of Duroc hogs. Walker was employed by him to solicit advertising and incidentally subscriptions upon a commission basis. The arrangement was verbal, but Walker was to receive as his compensation 33 1-3 per cent. on all

moneys collected for advertising procured by him. There was this further arrangement, that DeVore was to advance to Walker $100 a week to cover his traveling expenses, the same to be charged to Walker's account.

The issue in the present case involves a balancing of accounts between Walker and DeVore to determine the status of their respective accounts. The record shows that at the time of his employment, about March 10, 1922, Walker was indebted to DeVore on account of previous transactions in the sum of $2,788.35. Between that date and June 24, 1922, the date of the garnishment, DeVore had advanced and paid items on Walker's account in the sum of $1,269.09, so that the charges against Walker on June 24 amounted to $4,057.44. The record does not show clearly the amount of collections made up to that date upon which Walker would be entitled to receive commissions under his contract. It does show, however, that on that date there had not been collected, on contracts procured by Walker, an amount sufficient to cancel the indebtedness of Walker to DeVore on June 24, 1922. The record shows that, on the date of garnishment, Walker had procured a large number of advertising contracts which, if "run" by the paper and collected by DeVore, would, on a balancing of their respective accounts, show that DeVore was indebted to Walker in a considerable sum.

On April 7, 1923, when the garnishee made his final answer in court, the record shows with reasonable certainty there had been collected up to that date on contracts procured by Walker, up to June 24, 1922, $17,454.26 of which he, under the terms of his contract, was entitled to receive $5,818.09. If a balance were struck upon the figures thus far given, DeVore would be owing Walker on April 7, 1923, $1,760.43, not including interest.

The record further shows that after the summons in garnishment was served on DeVore, June 24, he continued to advance to Walker $100 a week, as required by the terms of his contract, up to April 7, 1923, the date of his final answer, so that the books showed on the last-named date noth-

ing was due Walker on contracts procured by him up to June 24, 1922.

The case thus arises out of an attempt on part of the courts of this sovereignty to subject the property of a nonresident to the demands of our own citizens. While the right to do so is undoubted in a proper case, yet, because of the inherent nature of such proceedings, certain difficulties pertain to and adhere therein.

While the procedure in our courts, inclusive of the method of obtaining jurisdiction over the nonresident parties by substituted service, is, and properly may be, regulated by our legislature, yet such power is subject to a federal limitation that courts of a state cannot so acquire jurisdiction over nonresidents for the mere purpose of a personal adjudication against them; indeed, not for any purpose except to adjudicate either with reference to the property within this state, or with reference to the status of some of its citizens. Our statutes on this subject of acquiring jurisdiction over nonresidents must be read in the light of the interstate limitation resting upon us by reason of the frame of government of the nation, of which our state is a part. *Moyer v. Koontz,* 103 Wis. 22.

Indeed, the controlling principle, as announced by the supreme court of the United States, is: "The state, through its tribunals, may subject property situated within its limits owned by nonresidents to the payment of the demand of its own citizens against them; and the exercise of this jurisdiction in no respect infringes upon the sovereignty of the state where the owners are domiciled. Every state owes protection to its own citizens; and, when nonresidents deal with them, it is a legitimate and just exercise of authority to hold and appropriate any property owned by such nonresidents to satisfy the claims of its citizens. It is in virtue of the state's jurisdiction over the property of the nonresident situated within its limits that its tribunals can inquire into that nonresident's obligations to its own citizens, and the inquiry can then be carried only to the extent necessary to control the disposition of the prop-

erty. If the nonresident have no property in the state, there is nothing upon which the tribunals can adjudicate." *Pennoyer v. Neff*, 95 U. S. 714.

So is it also true that— "The general rule is well settled that the situs of debts and obligations is at the domicile of the creditor. But the attachment laws of many states recognize the right of a creditor of a nonresident to attach a debt or credit owing or due to him by a person within the jurisdiction where the attachment issues, and to this extent the principle has been sanctioned that the laws of a state, for the purposes of attachment proceedings, may fix the situs of a debt at the domicile of the debtor." 2 R. C. L. 806, sec. 5.

The statutory provisions of this state governing and controlling the proceedings now before us for review, to be construed "in the light of the interstate limitations resting upon us," embrace the following enactments: Comp. St. 1922, secs. 8562, 8583, 8676-8728.

Two distinct classes of actions are contemplated by these provisions: (1) The ordinary civil action commenced by filing of petition, and the issuance of a proper writ thereafter personally served upon the defendant within the jurisdiction of this state in the manner provided by law. (2) A civil action commenced by filing of petition not followed by personal service, but where the jurisdiction rests solely upon the fact of property seized, and where the exercise of judicial powers is limited to the proper disposition of such property then in the hands of the court.

Sections 8676-8728, Comp. St. 1922, embrace provisions general in their nature and ordinarily, except where context thereof, or the provisions of statutes in *pari materia*, indicate the contrary, regulate, provide for, and govern the application of this ancillary remedy whenever the same is invoked.

In this connection it is to be noted that section 8702, Comp. St. 1922, provides: "If the garnishee appear and answer, and it is discovered in his examination that, *at or after* the service of the order of attachment and notice

upon him, he was possessed of any property of the defendant or was indebted to him, the court may order the delivery of such property and the payment of the amount owing by the garnishee into the court."

The only provision of the Code for notice by publication in these actions is section 8583, Comp. St. 1922, which is in the following language: "Service may be made by publication in either of the following cases: * * * Third. In actions brought against a nonresident of this state, * * * having in this state property or debts owing to them, sought to be taken by any of the provisional remedies, or to be appropriated in any way."

Section 8562, Comp. St. 1922, provides: "An action * * * against a nonresident of this state * * * may be brought in any county in which there may be property of, or debts owing to said defendant, or where said defendant may be found."

The section last quoted was before this court in *Lamb v. Finch*, 87 Neb. 565. On May 25, 1908, the plaintiffs therein filed their petition and præcipe for summons in the district court for Perkins county, Nebraska, which was issued on May 25, and on May 28 personally served on defendant Finch in Perkins county. However, the proof appearing uncontradicted that on May 25, the date of the commencement of this action, Finch was a resident of Colorado, and was not within Perkins county nor the state of Nebraska, this service was quashed as not in compliance with section 8562, Comp. St. 1922.

Can it be contended, in view of the language as thus construed that, had Finch in that case been accompanied by a shipment of personal property made to a resident of Perkins county as his agent, who had been served with garnishment on the day Finch was served with summons, and prior to its arrival or receipt in Perkins county, but at a time when the property in question was still without the boundaries of the state, this court would have denied jurisdiction as to Finch's person, but sustained it as to Finch's property? It would seem, in view of the language appear-

ing in section 8562, *supra,* particularly when construed in the light of our interstate limitation, that its requirements as to the necessity of person and as to the necessity of property "being within the county at the time of the institution of the action" are identical and mandatory.

It would also seem beyond controversy, in view of the language of section 8562, *supra,* as interpreted by this court and the interstate limitation resting upon us as expressed by the supreme court of the United States in the words, "If the nonresident have no property in the state, there is nothing upon which the tribunals can adjudicate," that jurisdiction of this court would be limited in cases of attachment based solely on the ground of nonresidence to what was actually levied upon at the time for service of process. *Pennoyer v. Neff, supra.*

The record discloses without dispute that there was nothing due and owing from DeVore to Walker on June 24, 1922.

True, DeVore had contracts for publications which, when made, and if, and only when, paid for by third persons, would entitle Walker to further compensation. But at the commencement of this action against Walker, at the time of the service of process therein, as well as at the time of the hearing on July 11, 1923, these were simply contingencies, and nothing was then owing thereon from DeVore to Walker.

It thus appears that such contingent claims were not the subject of attachment or garnishment.

"Indebtedness dependent upon collection of money from a third person is contingent, and cannot be reached by garnishment until after the money has been collected." 28 C. J. 134. See, also, *Foster v. Singer,* 69 Wis. 392; *Norton v. Soule,* 75 Me. 385; *Black v. Zacharie & Co.,* 3 How. (U.S.) *483; *Dennison v. Soper,* 33 Ia. 183.

Indeed, in the limitations expressed in section 8562, *supra,* in effect restricting the right to bring suit against a nonresident to counties "in which there may be * * * debts owing to said defendant," and in section 8583, *supra,*

providing for publication of notice of actions based on attachment proceedings against nonresidents only for cases where and when nonresidents have "debts owing to them" in this state, and in view of the interstate limitation necessarily imposed, our several enactments on this subject fairly express a legislative intent that the liability of the garnishee of a nonresident debtor in a case involving facts similar to the instant case is limited to that for which the nonresident may be sued in our courts, viz., "debts owing to such defendant" on the date of the commencement of the action against such nonresident. No other action of this character is provided for or permitted. The fact of "debts owing to the defendant" must therefore be determined by the status of the funds in the hands of the defendant's garnishee or the then condition of their mutual accounts at the time of the service of process upon such garnishee upon which the jurisdiction of the court in such cases is made to depend.

This construction does not ignore nor do violence to the words contained in section 8702, *supra*, "at or after the service of the order of attachment." The words last quoted are a part of the general provisions of our statutes of attachment. The language of sections 8562, 8583, Comp. St. 1922, are specific provisions relating to a specific subject-matter, viz., "attachment against nonresidents." As specific provisions, in view of the question presented by the facts of this record, they control, and the limitations they express and necessarily imply will prevail. *McCann v. McLennan*, 2 Neb. 286; *Albertson v. State*, 9 Neb. 429; *Richardson County v. Miles*, 14 Neb. 311; *Merrick v. Kennedy*, 46 Neb. 264; *State v. City of Kearney*, 49 Neb. 325; *State v. Cornell*, 53 Neb. 556; *State v. Cornell*, 54 Neb. 72; *State v. Several Parcels of Land*, 79 Neb. 638; *State v. Seavey*, 22 Neb. 454; *State v. Nolan*, 71 Neb. 136.

In view of the obvious fact that the construction here made conforms our practice to the interstate limitations resting upon us, and to the doctrine of *Pennoyer v. Neff*, *supra*, it would seem to be mandatory. The conclusion would

therefore follow that the judgment appealed from is not sustained by the admitted facts of the transaction.

But, even if this deduction be an error, it would not follow that the evidence in the record sustains the judgment. As already stated herein, on April 7, 1923, when the final hearing of the garnishee was had and an order entered in the district court for Douglas county, Nebraska, which DeVore declined to perform, upon which the present suit was instituted against him, the record in the present case shows with reasonable certainty that there had been collected up to that date on contracts procured by Walker up to June 24, 1922, $17,454.26, of which he, under the terms of his contract, was entitled to receive $5,818.09, less advances made to him by DeVore.

If a balance be struck upon the figures thus far given, and denying credit to DeVore for advances made by him to Walker subsequent to June 24, 1922 (the date of the service of the notice of garnishment), DeVore would then be owing Walker on April 7, 1923, $1,760.43, not including interest. The record also discloses that DeVore continued, as required by his contract, his advances of "expense money" to Walker after service of notice of garnishment upon him, so that, if he be credited with this amount thus paid, nothing was due from DeVore to Walker on April 7, 1923.

In this connection there is no issue of fraud or collusion presented by the pleadings in the instant case. This contract of employment with Walker was for continuous service with compensation on a contingent basis, and imposed the obligation on DeVore to make certain "advances" for expenses, etc., so that Walker could be kept at work pending the time when the collection of the contracts of advertising secured by him had been completed. Upon the happening of that event, from his 33 1-3 per cent. were to be deducted such advances as had been made to him, and he was entitled only to any balance that might result.

The amount of the advances made after June 24, 1922, are thus within the contract of the parties, and are reason-

able and customary in the business in which the parties were employed. The continuance of these payments, it must be admitted, was essential to the continuance of the business in which Walker was employed and in which De-Vore was engaged.

In a case involving similar facts, the supreme court of Alabama sustained the right of the garnishee to continue the payments required by his contract, and to receive credit for the payments thus made, and laid down the following rule: "It is sufficient to note that the mere agreement to work on an advance pay, or drawing account, basis, is not fraudulent. Garnishment is a process to reach the estate of the debtor. Third persons owe no duty to his creditors to aid in the accumulation of an estate. If they engage one's services upon a contract calling for pay in advance, the employee becomes debtor to the employer. So long as they live within such contract, and no cause of action in assumpsit accrues to the debtor, his creditor can stand on no higher ground. The high legal and moral duty of the debtor to pay does not give the creditor a property right in the debtor's services, and employers are not required to contract on the basis of any such right." *Simpson Coal & Transfer Co. v. Hood,* 215 Ala. 175. See, also, as sustaining the principle involved in this case, *Alexander v. Pollock & Co.,* 72 Ala. 137; 28 C. J. 172, 173; *Callaghan v. Pocasset Mfg. Co.,* 119 Mass. 173; *Worthington v. Jones,* 23 Vt. 546; *Bambrick v. Bambrick Bros. Construction Co.,* 152 Mo. App. 69; *Eller v. National Motor Vehicle Co.,* 181 Ia. 679; *Bump v. Augustine,* 163 Ia. 307.

In view of the doctrine above announced, it would follow that even if DeVore's liability were dependent on the facts as they existed April 7, 1923, he would be entitled to credit for all advances made under the contract of employment up to that date, notwithstanding the garnishment, with the result that on the day last named there would be nothing due Walker, and therefore nothing to support the judgment entered against DeVore.

It follows, therefore, that in the entry of judgment in this case against DeVore the district court erred. The judgment of the district court is, therefore, reversed and the action dismissed.

REVERSED AND DISMISSED.

Note—See Garnishment 12 R.C.L. 850, 28 C. J. 130 n. 2, 134 n. 31, 172 n. 91.