No. 47,302

Claude Harpster, *Plaintiff-Appellant,* v. Harold L. Reynolds a/k/a Harold L. Reinolds, *Defendant,* and Bruenger Truck Co., *Garnishee-Defendant Appellee.*

(524 P. 2d 212)

Opinion filed July 17, 1974.

*Ray Hodge,* of Beaty, Hodge and Wood, of Wichita, argued the cause, and was on the brief for the plaintiff-appellant.

*Marvin C. Pendergraft,* of Render, Kamas and Kelly, of Wichita, argued the cause, and *Ronald L. Nieto,* of the same firm, was with him on the brief for the garnishee-defendant appellee.

The opinion of the court was delivered by

Prager, J.: This is a postjudgment garnishment proceeding in which the judgment creditor seeks to attach the wages of the judgment debtor. The facts are not in dispute and are basically as follows: Some time prior to April 9, 1973, the plaintiff-appellant, Claude Harpster, obtained a judgment against the defendant, Harold L. Reynolds, in the amount of $1250. This garnishment proceeding was brought against Reynolds's employer, Bruenger Truck Company, to garnishee Reynolds's wages. We will refer to Bruenger Truck Company as the truck company or the employer. Bruenger Truck Company is engaged in an interstate trucking business. Reynolds was one of its drivers. The evidence presented

at the hearing shows that Bruenger's drivers are paid by the trip, not by the week or month. The truck company has established the following procedure which had been in effect at least two years prior to the serving of the garnishment summons: The truck company advances money to each driver prior to his starting out on a trip. This money is to be used for trip expenses. In addition, the truck company has established a line of credit for its drivers at various truck stops throughout the United States. There a driver may obtain limited amounts of money or services. On notice the truck company will promptly repay such persons for money or services advanced to the driver. When the driver returns to the company's home office in Wichita he makes a full accounting for fuel and other expenses of the trip properly chargeable to his employer. All legitimate expenses are itemized and the driver turns in cash tickets for moneys advanced to him. The expenses are checked against the moneys advanced and at the same time the driver's wages are determined on a mileage basis which, of course, varies with each trip. If there is a balance in favor of the driver, he is paid by check. If there is a balance in favor of the truck company, the driver is paid nothing and stands indebted to the truck company. This is the standard procedure which Bruenger uses in dealing with all of its truck drivers.

The record shows that the financial transactions between the truck company and Reynolds in this case are somewhat complex. For clarification they will be listed in chronological order:

April 9, 1973  The Bruenger Truck Company advanced $350 to Reynolds as expense money for a trip.

April 10, 1973  The order of garnishment from the district court of Sedgwick county was served on the garnishee, Bruenger Truck Company.

April 13, 1973  The truck company paid Los Angeles Truck Terminal $100 for money or credit advanced to Reynolds.

April 14, 1973  The truck company paid Triple-T Truck Stop $100 for money or credit advanced to Reynolds.

April 16, 1973  The truck company paid to Tucumcari Truck Stop $50 for money or credit advanced to Reynolds.

April 16, 1973  The truck company paid some undesignated third party $75 for money or credit advanced to Reynolds.

April 16, 1973  Reynolds returned to the home office of the company in Wichita from a trip to the west coast. The office determined that Reynolds had drawn more money by way of advances for expenses than he had coming for salary. All of the payments mentioned above were considered in striking a balance.

April 20, 1973   Reynolds started out on another trip and the truck company advanced him a total of $350 for expenses.

April 25, 1973   The truck company advanced Reynolds $75.

April 27, 1973   The truck company as garnishee filed its answer denying that it was indebted to Reynolds.

April 28, 1973   The truck company advanced Reynolds $350 as expenses for another trip.

May   1, 1973   The truck company advanced Reynolds $175 as expenses for a trip.

May   7, 1973   A second order of garnishment from the district court of Sedgwick county was served on the truck company as garnishee.

May  11, 1973   The truck company filed its answer as garnishee denying that it was indebted to Reynolds. The answer stated that Reynolds owed money to the truck company.

The evidence at the hearing was undisputed that the last check paid to Reynolds for salary was in the amount of $19 which was paid on April 9, 1973. Harpster as judgment creditor was not satisfied with the answers which were filed by the truck company as garnishee on April 27 and May 11, 1973, both of which denied that the garnishee owed money to Reynolds and both of which stated that Reynolds was indebted to the truck company. Harpster took issue with the answer filed by the garnishee and the matter was set for hearing. At the hearing in district court a representative from Bruenger Truck Company testified as to the usual procedure followed by the truck company in advancing money to its truck drivers for trip expenses which is discussed above. A number of checks were produced which established the payments as set forth in the chronological list of events. The truck company's representative testified categorically that the truck company was not indebted to Reynolds because the advances made to him exceeded any wages which he had coming. At the conclusion of the evidence the trial court found in favor of Bruenger Truck Company, the garnishee, for the reason that there was nothing due and owing from the garnishee to Reynolds and that the answer as filed was correct. Harpster has brought a timely appeal to this court.

The appellant Harpster has raised only one point on this appeal which he states as follows: The court erred in allowing the garnishee to setoff defendant's paycheck against indebtedness of the defendant to the garnishee incurred after the garnishment was served and before it was answered. In support of his position Harpster reasons as follows: Once the truck company as garnishee

received the garnishment order, it had no right to offset any indebtedness owed by Reynolds by reason of money advanced after the garnishment order was received and before the answer was filed. The thrust of the argument is that to allow a garnishee to claim as an offset moneys advanced on behalf of the debtor after receipt of the garnishment order would defeat the garnishment process. Hence Harpster contends that advancements made after the garnishment order was served and before the answer was filed were not proper offsets and he is entitled to attach by garnishment any wages due Reynolds without taking into consideration such offsets.

The position of the Bruenger Truck Company as garnishee is essentially this: A judgment creditor can acquire no greater rights against the garnishee than are possessed by the judgment debtor. The procedure for the advancement of travel expenses and the determination of the balance of accounts between the truck driver and the truck company at the end of each trip is a perfectly legitimate arrangement and, in the absence of proof of fraud, arrangements for advances between the employer and employee will be respected and enforced by the courts. The truck company as employer had the right to offset the usual advances made in accordance with its customary procedure. Hence the trial court was entirely correct in finding that it was not indebted to Reynolds for wages.

Before considering the Kansas statutory law on the subject it would be helpful to review some of the basic principles of law generally recognized and applied in garnishment cases. In the first place, in garnishment proceedings the creditor takes the place and stands in the shoes of his debtor, taking only what the latter could enforce. (*Gilley v. Farmer*, 207 Kan. 536, 485 P. 2d 1284.) In *Investment Co. v. Jones*, 2 Kan. App. 638, the rule is stated as follows:

"Proceedings in garnishment do not change the legal relations and rights existing between the defendant and the garnishee, nor place the plaintiff in a more favorable position for the enforcement of a claim against the garnishee than would be the defendant in an action brought by him for the same cause; nor can any one be held in such proceedings to the payment of a liability which the defendant could not himself enforce because of existing equities and set-offs."

Further support for the rule is found in *Septer v. Boyles*, 149 Kan. 240, 86 P. 2d 505.

Secondly, we should note the rule pertaining to offsets claimed by a garnishee which arise after service of the garnishment summons. Ordinarily a claim acquired by the garnishee against the principal debtor after the service of the garnishment proceedings cannot be made available as a setoff. However, there is an exception to the rule where the garnishee's claim arises out of the very contract upon which his liability to the principal debtor accrued. This exception is recognized with case law cited in 6 Am. Jur. 2d, Attachment and Garnishment, § 373. Kansas recognized and applied the exception in *Investment Co. v. Jones,* supra, where the garnishee claimed certain offsets because of interest payments made by the garnishee on behalf of the debtor after the service of the granishment summons. The court held that since those payments were all matters connected with and growing out of the very contract upon which the liability of the garnishee to the principal debtor was based, they were proper matters for setoff.

The third principle of law to be considered pertains to advance payments made by an employer to his employee for salary and expenses in cases where a judgment creditor of the employee subsequently seeks to garnishee his wages. In this regard the rule is that in the absence of fraud and collusion, no garnishable debt can arise from a contract for personal services, where, pursuant to the terms of the employment, the employee is paid in advance. This rule extends not only to amounts paid as compensation, but also to payments made in advance to cover necessary expenses thereafter to be incurred by the employee in performing the contract of employment. The rule is stated in 6 Am. Jur. 2d, Attachment and Garnishment, § 178, citing as authority *Salyers Auto Co. v. DeVore,* 116 Neb. 317, 217 N. W. 94 and *Coastal Adj. Bureau v. Hutchins,* 229 Or. 418, 367 P. 2d 430. There is discussion of the principle with supporting cases cited in 38 C. J. S. Garnishment § 115 at page 324. There are annotations on the subject in 56 A. L. R. 2d 629 and 93 A. L. R. 2d 995, which cite other cases in support of the general rule. The Supreme Court of Alaska recognized and followed the rule in *Anchorage Helicop. Serv. Inc. v. Anchorage W. Hotel,* (Alaska) 417 P. 2d 903. The rule is recognized by inference in *Phelps v. A. T. & S. F. Rld. Co.,* 28 Kan. 165 at page 173.

With these basic principles in mind we should now examine the Kansas statutes pertaining to garnishment offsets. K. S. A. 1973 Supp. 60-718 (*c*) places upon the garnishee the burden of proving

offsets or indebtedness claimed to be due the defendant from the garnishee. K. S. A. 60-719 provides that when the garnishee claims that he is not indebted to the defendant for the reason that the defendant is indebted to the garnishee, or that the indebtedness due to the defendant is reduced thereby, the garnishee is not discharged unless and until he applies the amount of his indebtedness to the defendant to the liquidation of his claim against the defendant. It is also important to note that in 1972 the Kansas garnishment statutes 60-717 and 60-718 were amended to distinguish and treat in a different way garnishment proceedings brought for the purpose of attaching an indebtedness *other than earnings* and garnishment proceedings brought for the purpose of attaching the *earnings* of the defendant. K. S. A. 1973 Supp. 60-717 (*c*) provides that a non-wage garnishment order has the effect of attaching any indebtedness owing the defendant at the time of the service of the order and all other indebtedness becoming due to the defendant between the time of the service of the order of garnishment and the time of the filing of the answer of the garnishee. In wage garnishments, however, the order of garnishment is declared to have the effect of attaching the nonexempt portion of the defendant's earnings *for the entire normal pay period in which the order is served.* K. S. A. 1973 Supp. 60-718 (*a*) sets forth in full a form of answer to be used where the garnishment is issued for the purpose of attaching property or indebtedness *other than earnings.* A separate and distinct form is provided in section (*b*) to be used where the garnishment seeks to attach the *earnings* of the defendant.

With these basic principles of law in mind we must now apply them to the facts of this case. The factual situation in the present case is complicated by the fact that the defendant employee, Harold L. Reynolds, was not paid by the week or by the month or for any regular pay period. The evidence at the hearing disclosed that Reynolds and the other truck drivers were paid at the completion of each trip at which time a balance of account was determined taking into consideration the expenses incurred, the advances made therefor prior to and during the trip, and the compensation due the driver calculated on the basis of the total number of miles traveled. On the undisputed evidentiary record the trial court found that there was no indebtedness owing from the garnishee, Bruenger Truck Company, to the debtor, Reynolds, and hence the garnishee was entitled to judgment. Where the

evidence clearly shows a bona fide procedure for advance payments to an employee to cover expenses in performing the work, such a procedure should be upheld in a garnishment proceeding brought to attach the wages of the employee. The employer should be permittted to claim the usual offsets in the usual way where the offsets are actually applied against the employee's wages as required by K. S. A. 60-719. In cases, however, where fraud and collusion are shown the creditor should be protected from a fraudulent manipulation of the accounts by the employer. In this case there is no evidence of fraud or collusion. All advance payments made by the garnishee to cover trip expenses were made according to the usual, routine procedure and the balance of the account was determined at the conclusion of each trip in the usual way. The evidence presented at the hearing established that the garnishee, Bruenger Truck Company, was never indebted to the defendant debtor, Harold L. Reynolds, for the "normal pay period" in which the garnishment order was served. Hence the district court correctly determined the case in favor of the garnishee.

For the reasons set forth above the judgment of the district court is affirmed.

OWSLEY, J., dissenting.