# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-00182-SCT

*CONSOLIDATED PIPE & SUPPLY COMPANY, INC.*

*v.*

*R.D. COLTER, JR., TRUSTEE FOR THE BENEFIT OF CREDITORS OF B. G. FORTENBERRY DRILLING COMPANY, INC., FOUR RIVERS EXPLORATION, INC., FRIO EXPLORATION, L.L.C., R. W. DELANEY CONSTRUCTION COMPANY, KAISER PETROLEUM PRODUCTS, LEWELL TONEY, MISS-LOU PIPE & EQUIPMENT COMPANY, INC., HALLIBURTON LOGGING SERVICES, INC., BLANEY'S OILFIELD SUPPLY, INC., BLANEY OILFIELD SPECIALTY, INC., ARMADILLO SERVICES, INC., AND RUDY KRUGER*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/24/97 |
| TRIAL JUDGE: | HON. KENNIE E. MIDDLETON |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | RONALD KEITH FOREMAN |
| | JOHN MARK FRANKLIN, III |
| ATTORNEYS FOR APPELLEES: | R. BRENT BOURLAND |
| | JOHN T. GREEN |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 1/28/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/12/99 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. R. D. Coulter, Jr., as Trustee for the Benefit of Creditors of B. G. Fortenberry Drilling Company, Inc., filed a petition seeking to have the rights and obligations of interested parties determined. Consolidated Pipe

& Supply Company appeals from a judgment entered by the Chancery Court of Adams County, Mississippi, The Honorable Kennie E. Middleton presiding, and assigns the following issues for our consideration.

**I. WHETHER THE TRIAL COURT ERRED IN ALLOWING PAYMENT OF FORTENBERRY'S SUPPLIERS' CLAIMS OF $24,827.66 PRIOR TO PAYING THE CLAIM OF CONSOLIDATED PIPE & SUPPLY COMPANY, INC.**

**II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE TRUSTEE A $5,000 CREDIT FOR REMOVING THE DRILLING RIG PRIOR TO PAYING THE CLAIM OF CONSOLIDATED PIPE & SUPPLY COMPANY, INC.**

**III. WHETHER THE TRIAL COURT ERRED IN ALLOWING FOUR RIVERS A SETOFF OF $1,066.39 AGAINST THE AMOUNT DUE AND OWING UNDER THE FOUR RIVERS CONTRACT PRIOR TO PAYING THE CLAIM OF CONSOLIDATED PIPE & SUPPLY COMPANY, INC.**

## STATEMENT OF THE FACTS

¶2. The facts surrounding the dispute between the parties are largely undisputed and were fairly and accurately set forth by Chancellor Middleton in the court's findings of fact and conclusions of law.

### Fortenberry

¶3. Fortenberry Drilling Company, Inc., ("Fortenberry") was an oil well drilling company engaged in business in and around the Adams County, Mississippi area. B.G. Fortenberry ("B.G.") was the principal owner of Fortenberry.

### The Four Rivers Contract

¶4. On October 10, 1995, Fortenberry and Four Rivers Exploration ("Four Rivers") entered into a drilling contract whereby Fortenberry agreed to drill a well, known as the Missiana No. 6, in Catahoula Parish, Louisiana. Four Rivers, as operator of the well, agreed to pay Fortenberry $60,000 upon completion of the drilling and, in addition, day rates per 24 hours of $4,200 with drill pipe and $4,100 without drill pipe. The chancellor found there was $2,808.33 at issue at the time of trial.

### CPSC's Judgment

¶5. On October 25, 1995, Consolidated Pipe & Supply Company ("CPSC") obtained a default judgment in the amount of $81,043.41, plus interest, reasonable attorney's fees, and all costs of court against Fortenberry in the United States District Court for the Southern District of Mississippi. An abstract of CPSC's default judgment was entered on the judgment roll on November 15, 1995, by the Circuit Clerk of Adams County.

### The Frio Contract

¶6. On January 9, 1996, Fortenberry and Frio entered into a drilling contract whereby Fortenberry agreed to drill a well permitted as the S.J. Braddock No. 1, located in Amite County, Mississippi. Frio, as operator of the well, agreed to pay Fortenberry $39,000 upon completion of the drilling and, in addition,

day rates per 24 hours of $4,200 with drill pipe and $4,100 without drill pipe. The chancellor found there was $41,950 at issue at the time of trial.

¶7. The chancellor specifically found that $20,000 "was intended to be used by Fortenberry to pay the Suppliers for supplies and/or services provided to Fortenberry" during the drilling of the well, with the remainder of the contract price to be paid after Fortenberry provided Frio with lien releases for materials and/or services provided by third-party vendors and subcontractors. Additionally, the contract called for Fortenberry to move its drilling rig in and out of the drilling area.[1] The suppliers were not employed by Frio and had no contractual privity with Frio.

## CPSC's Execution on Its Judgment

¶8. CPSC filed suggestions for writs of garnishment against Frio and Four Rivers on January 22, 1996, with the writ of garnishment served on Frio on January 27, 1996. While Fortenberry had completed all drilling activity on the Frio job at the time the writ was served, Fortenberry had not completed all the terms of its contract with Frio, because it had neither removed the drilling rig nor supplied the lien releases for materials and/or services provided by the suppliers. Thus, Frio had not released $41,950 due under the contract. At the time of trial, the suppliers and subcontractors had not filed liens on the well in question.

## Fortenberry's General Assignment

¶9. Fortenberry executed a general assignment for the benefit of creditors to R.D. Colter as trustee on January 31, 1996. The assignment was made two days after CPSC served its writs on Four Rivers and Frio. The chancery court authorized the trustee to borrow $5,000 to pay the cost of removing the drilling rig under the Frio Contract.

## Decision of the Chancery Court

¶10. The chancellor found that as of the date the writs were served, the property in the hands of Four Rivers and Frio, which belonged to Fortenberry, was bound and subject to CPSC's judgment lien obtained against Fortenberry. Chancellor Middleton also held that Frio's liability to Fortenberry was established and not contingent. However, he found that the intent of the parties was for Fortenberry to pay the suppliers with the first $20,000 obtained from Frio, and that Fortenberry was not entitled to the remainder of the contract price until the lien releases from the suppliers were obtained. He found that neither law nor equity favored awarding CPSC the full contract amount of $41,950 free and clear of any expenses.

¶11. With respect to Four Rivers, the chancellor found that Mississippi law allowed a garnishee to setoff a claim he has against the principal debtor, but the debt must be "due and enforceable at the time the garnishment process was served." Four Rivers' claim for setoff arose two days after the service of the writ of garnishment which, under the general rule, would normally not be allowed. In this case, the chancellor permitted the setoff under an exception which allows the setoff when the garnishee's claim arose from the very contract upon which his liability to the principal debtor accrued.

¶12. In sum, CPSC held a first-priority lien against the Frio contract in the amount of $12,122.34 ($41,950 less the $24,827.66 due the suppliers and the $5,000 cost associated with the removal of the drilling rig.) Under the Four Rivers contract, CPSC was entitled to $2,741.84 ($3,808.33 due under the contract minus the $1,066.39 setoff.) CPSC was entitled to receive a total of $14,864.18.

<u>**DISCUSSION OF THE LAW**</u>

**I. WHETHER THE TRIAL COURT ERRED IN ALLOWING PAYMENT OF FORTENBERRY'S SUPPLIERS' CLAIMS OF $24,827.66 PRIOR TO PAYING THE CLAIM OF CPSC.**

¶13. A chancellor's findings of fact will not be disturbed unless manifestly wrong or clearly erroneous. *Denson v. George*, 642 So. 2d 909, 913 (Miss.1994). For questions of law, our standard of review is *de novo*. *Harrison County v. City of Gulfport*, 557 So. 2d 780, 784 (Miss. 1990); *Cole v. National Life Ins. Co.*, 549 So. 2d 1301, 1303 (Miss. 1989).

¶14. CPSC asserts that the suppliers are merely unsecured, open account creditors with no greater rights than other unsecured creditors. It is the position of CPSC that the suppliers were not in contractual privity with Frio. Thus, according to CPSC, under Mississippi's statutory scheme, only Frio had lien rights against the well. On the other hand, the trustee argues that once the assignment for benefit of creditors was made, the trustee held the same status as a common law bankruptcy trustee.

¶15. The trustee's argument, while correct, is without merit in this instance. Fortenberry made the assignment for the benefit of creditors to the trustee on January 31, 1996. CPSC served writs of garnishment on Frio on January 27, 1996, and on Four Rivers on January 29, 1996. The trustee urges this Court to adopt the return date on the writs as the date of attachment. Miss. Code Ann. § 11-35-23(1) (Supp. 1998) specifically states "[a]ll property in the hands of the garnishee belonging to the defendant at the time of the service of the writ of garnishment, shall be bound by and subject to the lien ...." Since the assignment came after the service of the writs, the property belonging to Fortenberry, which was held by Frio and Four Rivers, was bound by the garnishment proceeding.

¶16. CPSC is correct in noting that the suppliers have no lien rights against the well. *See* Miss. Code Ann. § 85-7-131 and 135 (Rev. 1991). However, the chancellor's decision to allow the suppliers' claim was based on terms of the contract, rather than the above statutory provisions. Although the chancellor found that the funds due under the contract were of a garnishable nature, he held that only the funds belonging to Fortenberry were subject to the garnishment proceeding.

¶17. Under the terms of the contract, Frio was to pay Fortenberry $20,000 of the contract price for supplies and/or services provided *to* Fortenberry with the remaining $21,950 to be paid to Frio *when* Fortenberry provided lien releases from the suppliers and subcontractors. The chancellor found that the effect of this provision was to "assign" to the suppliers payment for their materials and/or services. This finding is in harmony with our statutory scheme. Only those funds "belonging to the defendant" are subject to the garnishment proceeding. Miss. Code Ann. § 11-35-23 (1972). Fortenberry's right to the remainder of the contract price never arose because the lien releases had not been provided as required by the contract. The chancellor was correct in holding that CPSC was only entitled to the difference between the total amount due under the contract and the suppliers' charges.

¶18. CPSC also argues that the trial court erred in admitting parol evidence to vary the terms of an unambiguous contract provision. At trial, Mike McDonald, Frio's manager, testified that it was the intent of the parties that the suppliers be paid before the remainder of the contract price would be paid to Fortenberry. The chancellor overruled the objection finding that the testimony went to the credibility of the

witness. Regardless, we have already found that the contract provisions required the lien releases before Fortenberry became entitled to the remainder of the contract price. Assuming that it was error to admit McDonald's testimony, it was harmless at worst. This entire assignment of error is without merit.

## II. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE TRUSTEE A $5,000 CREDIT FOR REMOVING THE DRILLING RIG.

¶19. Under the terms of the contract between Fortenberry and Frio, Fortenberry was obligated to move the rig in and out of the drilling site. Prior to trial, the trustee petitioned the chancery court to allow him to borrow $6,000 from United Mississippi Bank in order to pay for the removal of the rig. The court granted the trustee's petition. At trial, the chancellor awarded the trustee a $5,000 credit to be taken from the funds due Fortenberry under the Frio contract for the cost of removing the rig.

¶20. CPSC argues that Fortenberry was not required to use the funds due under the contract for the rig removal. Moving the rig was a condition of Fortenberry's contract, and as such, it can hardly be said that the chancellor abused his discretion in allowing the $5,000 credit for rig removal.

## III. WHETHER THE TRIAL COURT ERRED IN ALLOWING FOUR RIVERS A SETOFF OF $1,066.39 AGAINST THE AMOUNT DUE AND OWING UNDER THE FOUR RIVERS CONTRACT.

¶21. The gist of CPSC's position is that $785.44 of the $1,066.39 claimed setoff was not due until January 31, 1996, which was two days after the writ of garnishment was served on Four Rivers. Thus, the setoff should be disallowed because it came after the service of the writ.

¶22. A garnishee may setoff a claim that he has against the principal debtor provided that the claim is due and enforceable at the time process was served. *Brondum v. Rosenblum*, 151 Miss. 91, 92, 117 So. 363, 365 (1928). CPSC is correct in noting that the claim became due after the writ of garnishment was served on Four Rivers. However, the chancellor applied an exception to the rule. Where the garnishee's claim arose out of the very contract upon which his liability to the principal debtor accrued, the garnishee may setoff the claim even though it became due after the date of service of the writ. *Gemmingen v. First National Bank of Anchorage*, 890 P.2d 60, 63 (Alaska 1995); *Harpster v. Reynolds*, 215 Kan. 327, 524 P.2d 212, 215 (1974). CPSC does not dispute that the claim for setoff arose out the same contract which makes Four Rivers liable to Fortenberry. We find that the chancellor was correct in allowing Four Rivers a setoff in the amount of $1,066.39.

## CONCLUSION

¶23. CPSC's arguments are without merit. The learned chancellor was correct in his application of the law and equitable factors. The judgment of the Adams County Chancery Court is hereby affirmed.

¶24. **AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

1. The amount claimed by the respective suppliers is as follows: R. W. Delaney Constr. Co. (two claims for a total of $8,395.69); Kaiser Petroleum Products ($2,156.70); Lewell Toney ($325); Miss-Lou Pipe & Equipment, Inc., ($2,545.83); Halliburton Logging Services, Inc., ($6,234.21); Blaney's Oilfield Supply, Inc., ($236.01); Blaney's Oilfield Specialty, Inc., ($1,395.92); Armadillo Services, Inc., ($2,236.92) and Rudy Kruger ($1,301.38). The total amount of the claim by the suppliers is $24,827.66.