**ANCHORAGE HELICOPTER SERVICE, INC., d/b/a Gay Airways, Appellant,**

v.

**ANCHORAGE WESTWARD HOTEL, Appellee.**

No. 628.

Supreme Court of Alaska.

Sept. 6, 1966.

Peter J. Kalamarides, Anchorage, for appellant.

Francis J. Nosek, Jr., Anchorage, for appellee.

## OPINION

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

DIMOND, Justice.

Appellant employed Robert Immel as a pilot. Immel was indebted to appellee in the amount of $944.93. Appellee brought an action on the debt on August 14, 1963 in the district magistrate court.

On August 28, 1963 a writ of attachment was issued and a notice of garnishment served on appellant's president, Norman Stone, Jr. No funds were attached, Stone stating that no moneys were owing to Immel at that time.

On October 2, 1963 a default judgment in the amount of $1,131, including interest, costs and attorney's fees was entered against Immel. A writ of execution was served on appellant on October 14, 1963. In response to the writ, Stone stated that no moneys were due Immel as he was paid in advance.

Three additional writs of execution were issued and served on appellant on February 14, May 15 and November 27, 1964. All were returned unsatisfied.

In garnishee proceedings Stone was examined on three different occasions regarding the salary paid to Immel. Stone's explanation of appellant's failure to produce moneys of Immel in response to the garnishment process was that Immel had a backlog of debts, that appellant would pay the individual creditors on Immel's behalf from time to time and then would withhold such amounts from Immel's salary, and that at the various times process was served on appellant, Immel was indebted to appellant and therefore appellant had no moneys that belonged to Immel.

On January 6, 1965, following the third examination of Stone, the district magistrate made a decision which read in part as follows:

I find that Stone did not act in good faith; that he had adequate notice of the garnishments but sought to evade the processes of the court. I find that in more than one instance it appears that 'the garnishee' had property of defendant liable to attachment in the form of wages and will enter a judgment against the garnishee for the amount of plaintiff's judgment plus an attorney's fee of $150 and all costs of process since the first levy of attachment.

Appellant appealed to the superior court which rendered a decision affirming the judgment of the magistrate court. In an oral decision the superior court stated:

I have been over the employer's records; I have already said that they leave much to be desired, but to me it's entirely clear from those records that the employer when he made repeated returns of no money due to Immel, was lying. Actually, there were monies due. Taking his own records, there were monies due when many of those executions were levied on the employer. * * * The employer's records are such * * * that you can't figure out how much was due at any particular time. * * * I can't say whether they did or did not come to the amount of this judgment. However * * * it's almost a cinch that over the period of time that * * * certainly comes to more than the amount of the bill—the amount of the judgment here.

Appellant has now appealed to this court. The principal question presented is whether the magistrate court and the superior court reached the correct result in holding that appellant was liable for Immel's indebtedness to appellee.

The appellee had the burden of establishing that at the time of service of the garnishment process appellant had in its possession personal property belonging to Immel or owed a debt to Immel which would be recoverable by him in an action against appellant at the time of service of the process.[1] Appellant had the burden of establishing an affirmative defense,[2] such as appellant's asserted right of offset to wages due Immel by reason of advances made by appellant to pay some of Immel's other creditors.

As to the August 28 and October 14, 1963 garnishments, appellee sustained its burden, but appellant did not satisfy its burden. The evidence showed that during August and October 1963 Immel was employed by appellant at a salary of $1,000 a month, and that wages were paid twice monthly on the first and fifteenth of each month. There was no evidence produced which showed that Immel was indebted to appellant during those two months, or that he was not otherwise entitled to be paid his full salary. This means that it must be presumed that Immel had been paid a half-month's salary of $500 on August 15, 1963, and that when the first notice of garnishment was served on appellant on August 28, 1963, there was then owing by appellant to Immel a debt consisting of wages earned between August 16 and 28. Such wages, computed on a pro rata basis of $500 for the last half of the month of August, would amount to 13/16 of $500, or $406.25. Simi-

larly, on October 14, 1963, there was due Immel wages in the amount of 14/15 of $500, or $466.67.

In holding that the foregoing wages were owing to Immel at the times indicated, we adopt the view that Immel's salary was earned and owing to him on the dates of garnishment, even though such dates did not coincide with the times established by appellant for the payment of wages, that is, on the first and fifteenth of each month. On August 28 and October 14, 1963 Immel had earned pro rata portions of his salary based on the salary of $1,000 a month. Money earned is money owing within the meaning of AS 09.40.040,[3] despite the fact that money earned as of a particular date may not be payable under an employer's pay schedule until a later date. If Immel had left his employment on either August 28 or October 14, 1963 he would have been entitled to wages earned as of those dates regardless of the fact that the regular salary payment dates were not until September 1 and October 15, respectively. A debt already due, or for the maturity of which time alone is necessary, is subject to garnishment.[4]

As to the garnishments of February 14, May 15 and November 27, 1964, the appellant sustained its burden of establishing the affirmative defense of a right to setoff by showing from payroll records that at those times appellant had made advances on wages to Immel, either for himself personally or for the purpose of paying some of

1. General Acc. Fire & Life Assurance Corp. v. Mitchell, 120 Colo. 531, 211 P. 2d 551, 555 (1949); Bambrick v. Bambrick Bros. Constr. Co., 152 Mo.App. 69, 132 S.W. 322, 325 (1910).
   AS 09.40.040 provides:
   All persons having in their possession personal property belonging to the defendant or owing a debt to the defendant at the time of service upon them of the writ and notice shall deliver, transfer, or pay the property or debts to the peace officer, or be liable to the plaintiff for the amount of the property or debts until the attachment is discharged or a judgment recovered by plaintiff is satisfied. Debts and other

personal property may be delivered, transferred, or paid to the peace officer without suit, and the receipt of the officer is a sufficient discharge.

2. Oklahoma Farm Bureau Mut. Ins. Co. v. Tyra, 207 Okl. 116, 247 P.2d 969, 971 (1952).

3. Supra note 1.

4. Phillips v. Jones, 355 P.2d 166, 170 (Alaska 1960); Coastal Adjustment Bureau, Inc. v. Hutchins, 229 Or. 418, 367 P.2d 430, 432, 93 A.L.R.2d 992 (1961); Bambrick v. Bambrick Bros. Constr. Co., 152 Mo.App. 69, 132 S.W. 322, 325 (1910).

his other creditors. But the setoff to which appellant was entitled on February 14 did not result in appellant owing nothing to Immel, as appellant claimed. The total of advances on that date was $225. Total earnings of Immel as of that date were $350.[5] Giving appellant the right of offset in the amount of $225, the balance of earnings that were subject to garnishment was $125.

A different situation was presented on May 15 and November 27, 1964. On May 15 the total of advances that had been made was $577.50, and the wages earned amounted to $500. And on November 27, 1964, the advances totaled $790.50, whereas earnings amounted to 12/16 of $500, or $375. Because the advances exceeded earnings on those dates, Immel would have been unable to maintain an action against appellant for the recovery of wages. And since appellee did not have any greater rights against the garnishee-appellant than Immel did, in the absence of fraud there was no debt due to Immel and subject to garnishment on the dates in question.[6]

What we recognize here is the right of an employer to make advances to an employee in anticipation of future earnings, so long as this is done in good faith and not for the purpose of hindering the employee's creditors in their attempt to collect debts owed by the employee.[7] We find

no evidence of bad faith in this case. The fact that some of the advances made were to pay some of Immel's other debts does not necessarily indicate that they were made for the purpose of avoiding payment of appellant's account. For all the record shows, such advances were bona fide and without any purpose to delay or hinder appellant.

Nor was lack of good faith demonstrated by the fact that when the garnishments were made on May 15 and November 27, 1964 appellant did not then reckon the accounts and actually set off all of the indebtedness owed appellant by Immel, but instead on May 15 and subsequent pay days deducted from Immel's earnings the sum of $100 to $125 a month as installment payments of the indebtedness created by the advances appellant had made. We subscribe to the view that an employer, upon receipt of a notice of garnishment, is not required to wash out the employee-debtor's earnings against the balance in favor of the employer[8] in order to avail himself of the right to set off in the future, but that the parties will be permitted to operate a bona fide drawing account with a provision for installment payments of the employee's debt to his employer in the manner contemplated by the parties.[9]

Lack of good faith must in some manner be shown by the evidence.[10] No such showing was made here. We believe

5. The testimony of appellant's president, Norman Stone, showed that during the winter of 1963–64 Immel's salary was reduced from $1,000 to $750 a month. The payroll records show earnings as of February 15, 1964 in the amount of $375. What Immel was entitled to on the day previous, February 14, was 14/15 of $375, or $350.

6. Coastal Adjustment Bureau, Inc. v. Hutchins, 229 Or. 418, 367 P.2d 430, 432, 93 A.L.R.2d 992 (1961).

7. Id., 367 P.2d at 432.

8. If the employer, upon receipt of a notice of garnishment, was obliged to accelerate the maturity of advances and actually take his setoff against the debtor-employee's accrued earnings, this would presumably mean that as subsequent notices of gar-

nishment were presented, the indebtedness of the employee to the employer would be reduced to a point where a balance in favor of the employee might eventually result, and fall in the hands of a garnisheeing creditor. But whether such a result would be reached, would depend on whether further advances were made by the employer and, of course, upon whether or not the employer-employee relationship continued. Coastal Adjustment Bureau, Inc. v. Hutchins, 229 Or. 418, 367 P.2d 430, 93 A.L.R.2d 992 (1961).

9. Coastal Adjustment Bureau, Inc. v. Hutchins, supra note 8.

10. Bambrick v. Bambrick Bros. Constr. Co., 152 Mo.App. 69, 132 S.W. 322 (1910).

that the magistrate court was incorrect in finding that appellant did not act in good faith.

In summary, we hold that appellant was liable to appellee for the following amounts of money which were subject to garnishment on the dates indicated:[11]

| | | |
|---|---|---|
| August 29, 1963 | — | $406.25 |
| October 14, 1963 | — | 466.67 |
| February 14, 1964 | — | 125.00 |
| Total | — | $997.92 |

On November 27, 1964 the magistrate court issued an order nunc pro tunc providing:

> ORDERED AND ADJUDGED that Anchorage Helicopter Service, Inc., d/b/a Gay Airways, its president, manager, officers, agents and attorneys are enjoined from and after November 19, 1964 from applying wages or monies earned by the judgment debtor to other obligations owed by the judgment debtor and are ordered to pay all wages earned by judgment debtor directly to the judgment debtor * * *.

Appellant contends that the magistrate court erred in entering the above order because it did not have equity powers.

It is true that the jurisdiction of the district magistrate court does not extend to actions of an equitable nature,[12] and that Civil Rule 65, dealing with injunctions, is inapplicable to proceedings before a district magistrate.[13] But here the district magistrate court was not exercising jurisdiction in an action of an equitable nature, since the action before the court was based simply on the claim that Immel owed appellee a certain amount of money. Nor was the magistrate court proceeding under Civil Rule 65 when it restrained appellant from applying wages earned by Immel to other obligations owed by Immel. The court was proceeding under Civil Rule 89(f), which is applicable to proceedings before a district magistrate court, and which in connection with garnishee proceedings where a person is ordered to appear before the court to be examined as to any property or debt held by him belonging to a defendant, authorizes the court to:

> [E]nter an order restraining the garnishee from paying, transferring, or in any manner disposing of or injuring any of the property of the defendant alleged by the plaintiff to be in the garnishee's possession or control, or owing by the garnishee to the defendant. * * * [14]

Although the magistrate court had the authority to enter the order provided for in Civil Rule 89(f) (6), the order it entered went too far. There is nothing in the rule which authorized the court to order a garnishee "to pay all wages earned by judgment debtor directly to the judgment debtor." And there is nothing in the rule which authorizes the court to restrain the garnishee prospectively, that is, by restrain-

---

11. Civ.R. 89(f) (5) provides:
   If it shall be found that the garnishee, at the time of service of the writ of attachment and notice, had any property of defendant liable to attachment beyond the amount admitted in his statement, or in any amount if a statement is not furnished, judgment may be entered against the garnishee for the value of such property in money. At any time before judgment, the garnishee may be discharged from liability by delivering, paying or transferring the property to the peace officer.

12. AS 22.15.050 provides in part:
   The jurisdiction of the district magistrate courts does not extend to * * * (2) * * * actions of an equitable nature * * *.

13. Magis.Civ.R. 1(a) provides in part:
   (1) The procedure in civil actions and proceedings before a district magistrate shall be governed by the rules governing the procedure in the superior court to the extent that such rules are applicable.
   (2) The following rules are inapplicable in their entirety to proceedings before a district magistrate:
   RULE     TITLE
   Rule 65     Injunctions.

14. Civil Rule 89(f) (6).

ing appellant from paying or transferring wages earned by Immel "from and after November 19, 1964." The restraint may be imposed only as to wages owing at the time the order of restraint is issued. The magistrate's order was invalid and ineffective so far as it purported to regulate wages to be earned in the future and so far as it required appellant to pay all wages earned by Immel directly to Immel.

The judgment against appellant entered by the district magistrate court is set aside. The case is remanded to the superior court with instructions to remand to the district magistrate court for the purpose of entering a judgment against appellant in the principal sum of $997.92, together with costs and attorney's fees to be set by the district magistrate court, and together with interest on the sums and from the dates indicated below at the rate of 6 per cent per annum:

$406.25 — August 29, 1963.
$466.67 — October 14, 1963.
$125.00 — February 14, 1964.