**STEENMEYER CORPORATION, Garnishee Defendant/Appellant,**

v.

**MORTENSON–NEAL, Joint Venture, Plaintiff/Appellee,**

v.

**George CROOK, R.J. Braunschweig, Louis Braunschweig, NGC Investment & Development, Inc. d/b/a Window Supply Company, and Contractors Bonding & Insurance Company, Defendants.**

**No. S–1410.**

Supreme Court of Alaska.

Feb. 6, 1987.

Stephen S. DeLisio, Schaible, Staley, DeLisio & Cook, Inc., Anchorage, for garnishee defendant/appellant.

Richard H. Foley, Jr., Wade & De Young, Anchorage, for plaintiff/appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

BURKE, Justice.

## OPINION

This appeal arises out of an underlying breach of contract action between Mortenson-Neal and NGC Investment and Development, Inc. [NGC] In *Crook v. Mortenson-Neal*, 727 P.2d 297 (Alaska 1986), we affirmed a $61,149.49 judgment for Mortenson-Neal. After the trial court's ruling in favor of Mortenson-Neal in that action, NGC did not file a supersedeas bond to stay execution of judgment pending appeal. Mortenson-Neal, therefore, sought to execute its judgment. Mortenson-Neal served Steenmeyer Corporation, a debtor of NGC, and the appellant in this action, with a writ of execution and notice of levy shortly after receiving judgment in *Mortenson-Neal v. Crook*, No. 3AN 83–9441 Civil (Alaska Sup., March 6, 1985). Due to an alleged sale of NGC's assets to JDL Construction [JDL], Steenmeyer declined to remit monies owed for work performed by NGC. After trial, the superior court determined that Steenmeyer indeed owed NGC monies on the date of levy and, therefore, should have complied with the writ. This appeal ensued.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Steenmeyer Corporation [Steenmeyer] is a construction contracting firm which has been doing business in Alaska since 1956. Steven Steenmeyer is the sole shareholder in S.M. Steenmeyer Corporation which owns Steenmeyer. He purchased the corporation from his father in 1984 and has worked fulltime in the business since 1972. Steenmeyer has done business with R.J. Braunschweig, shareholder and officer in NGC,[1] d/b/a Window Supply Co. since 1973.

In the summer of 1983 Steenmeyer entered a contract with NGC for the purchase of windows for a government project at Elmendorf Air Force Base. The project was substantially completed in September

---

**1.** Braunschweig has owned various window supply companies over the years. For at least the last several years, Steenmeyer did business with NGC d/b/a Window Supply Co.

1984. Prior to completion Steenmeyer submitted a claim to the government for additional costs, including work performed by NGC. In early March 1985, negotiations concluded with the government. On March 7, Steenmeyer submitted an invoice to the government for the agreed upon amount of $260,000, $178,000 of which was owed to NGC. Steenmeyer testified that NGC would not in the normal course of business be paid until Steenmeyer received payment from the government.

Meanwhile, Mortenson-Neal was awarded a judgment against NGC at the close of its trial. On January 15, 1985, the superior court issued an order which stated that the court found "in favor of the plaintiff [Mortenson-Neal] on its promissory estoppel claim against NGC Investment and Development Company and its contract claim against R.J. Braunschweig." The court indicated that damages in the amount of $13,258 and $26,487 would be awarded in addition to attorney's fees. Mortenson-Neal was directed to prepare findings and submit them within ten days. Findings and conclusions were submitted on January 25, 1985 and signed by the court on March 6, 1985. On March 27, a writ of execution was served on Steenmeyer directing Steenmeyer to satisfy the judgment of $61,-149.49. Steenmeyer responded that it did not owe NGC but rather owed "JDL Investments d/b/a Window Supply." [2]

JDL Construction is incorporated in the State of Washington and does business there as "Window Supply Company." [3] JDL is owned by a cast of characters very similar to NGC. [4] On February 20, 1985, the shareholders of both corporations met in Renton, Washington and JDL allegedly "purchased the trade accounts receivable, accounts payable, and construction contracts from NGC Investment and Development, Inc. d/b/a Window Supply Company." Debtors, including Steenmeyer, were directed by JDL's letter of February 21, 1985, to make payments "directly to JDL Construction for any completed or in progress work." NGC also sent similar letters to debtors, including Steenmeyer. However, when Steven Steenmeyer received the writ of execution he contacted R.J. Braunschweig to inquire about the judgment; it was at this point that he actually learned of the transfer of ownership of NGC's assets to JDL. During that conversation Braunschweig told Steenmeyer that Steenmeyer need not pay Mortenson-Neal. Steenmeyer followed Braunschweig's advice.

On April 3, 1985, Mortenson-Neal's attorney conversed with Steenmeyer by phone, the conversation was memorialized in an April 5 letter. In the letter, Mortenson-Neal indicated that during the conversation Steenmeyer "agreed [to] ... withhold an amount equal to $61,518.88, subject to our instructions." Steenmeyer responded in an April 16 letter in which he stated "I am prepared to retain sufficient funds to cover the obligation of Window Supply, however am not prepared to release same at this time without clear direction from the court as it relates to the complication presented by JDL."

On May 17, Mortenson-Neal moved for an order compelling Steenmeyer to satisfy the writ. Defendant, NGC, responded that JDL had purchased contract receivables and contracts before judgment was entered and stated that Steenmeyer had paid JDL the $178,000 debt. On June 13, 1985, the court ordered Steenmeyer to pay $61,-518.88 to the court or show cause why such monies should not be paid.

2. Steenmeyer erred in referring to JDL Investments, the correct name of the corporation is JDL Construction.

3. Part of the problem in this case is the fact that both JDL and NGC did business as "Window Supply Company." Steenmeyer often referred to its dealings with NGC as with "Window Supply."

4. JDL's shareholders include Dennis Metteer, Daniel Braunschweig, R.J. Braunschweig, Louis Braunschweig and George Crook. NGC's shareholders include George Crook, R.J. Braunschweig, Louis Braunschweig and Edward Brown.

As indicated in NGC's response to Mortenson-Neal's motion for an order compelling payment by Steenmeyer, Steenmeyer paid its $178,000 debt to JDL on May 15, 1985,[5] despite the fact that the government had not yet paid Steenmeyer for the project.[6] Steenmeyer testified that he decided to pay "Window Supply" before being paid by the government because the Braunschweigs' indicated that "Window Supply" would be unable to perform on two contracts with Steenmeyer without the $178,000.[7] In exchange for the early payment of the $178,000, R.J. Braunschweig executed an indemnity agreement in favor of Steenmeyer. The agreement provided that:

> JDL Construction, Window Supply, Joe [R.J.] Braunschweig and Lou Braunschweig; as individuals agree to indemnify Steenmeyer Corporation for any liabilities or expenses Steenmeyer Corporation may be held liable for by the Alaska Court System by virtue of this advance payment [of $178,000].

Steenmeyer testified that the intent of the agreement was for the Braunschweigs to defend Steenmeyer against claims made by Mortenson-Neal.

After the superior court ordered Steenmeyer to pay the $61,518.88 on June 13, Steenmeyer requested relief. The court denied Steenmeyer's request and on September 17, 1985, the superior court again ordered Steenmeyer to deposit the $61,518.18 with the court, this time within twenty-four hours. The funds were delivered on September 23.

Ownership of the funds was determined after trial in October 1985. On November 19, 1985, the superior court issued an order which stated in part that:

> (1) Mortenson-Neal has established by a preponderance of the evidence that at the time of service of the writ of attachment and notice Steenmeyer had property of NGC Investment and Development, Inc., d/b/a Window Supply Company liable to attachment in excess of the total amount of the judgment in the case.
>
> (2) Steenmeyer is liable to Mortenson-Neal for the amount of the judgment.
>
> (3) Mortenson-Neal has met its burden of showing that NGC's purported assignment of all its assets, equipment and selected liabilities was a fraudulent conveyance under either Washington or Alaska law.

(Citations omitted).

On December 9, 1985, the superior court issued detailed findings of fact and conclusions of law. The court found that on March 27, 1985, the date the writ of execution was served, "Steenmeyer owed a debt to NGC Investment and Development." The court also found the debt to be based on the Elmendorf contract and found that "Steenmeyer was obligated to pay *NGC* upon receipt of funds from the United States Air Force" (emphasis added).

## II. DISCUSSION

### A. *Garnishment and Assignment*

The writ of execution served on Steenmeyer was issued pursuant to AS 09.40.040 which provides:

> All persons having in their possession personal property belonging to the defendant or owing a debt to the defendant at the time of service upon them of the writ and notice shall deliver, transfer, or pay the property or debts to the peace officer, or be liable to the plaintiff for the amount of the property or debts until the attachment is discharged or a judgment recovered by plaintiff is satisfied. Debts and other personal property may be delivered, transferred, or paid to the peace officer without suit, and the re-

---

5. In its brief and at oral argument, Steenmeyer vigorously asserted that the monies were not dispensed until June 10. JDL apparently did not cash the May 15 check until June; however, Steenmeyer issued a check to JDL on May 15, pursuant to an agreement made on May 13.

6. The government ultimately paid Steenmeyer on September 20, 1985.

7. Steenmeyer also loaned "Window Supply" $20,000 on May 15 for the development of a new type of window to be used on a Steenmeyer project.

ceipt of the officer is a sufficient discharge.

*Anchorage Helicopter Service v. Anchorage Westward Hotel*, 417 P.2d 903 (Alaska 1966), addressed the burdens to be borne by garnisher and garnishee in actions pursuant to AS 09.40.040. We held that the garnisher "had the burden of establishing that at the time of service of the garnishment process [the garnishee] had in its possession personal property belonging to [the judgment debtor] or owed a debt to [the judgment debtor]." *Id.* at 906 (footnote and citations omitted). The garnishee "had the burden of establishing an affirmative defense." *Id.* (footnote omitted). In *Anchorage Helicopter*, a writ of attachment and notice of garnishment was served on the employer-garnishee on five separate occasions. All were returned unsatisfied. The employer alleged that at the time the writs were served, no money was owing to the employee-judgment debtor. *Id.* at 905. The trial court found that the employer had property of the judgment debtor on all five occasions. We found for the judgment-creditor on two of the five garnishments.

In so holding, we analyzed exactly what monies were due on each date of service. Contrary to the employer's allegations that money only became due on payday, the court found that wages were due after each day worked, not at the times established for payment of wages. *Id.* at 906. We also held that the garnishee-employer met its burden by showing that it had a right to set off for advances made to the employee on three of the garnishments. *Id.* at 906–07. We recognized "the right of an employer to make advances to an employee in anticipation of future earnings, so long as this is done in good faith and not for the purpose of hindering the employee's creditors in their attempt to collect debts owed by the employee." *Id.* at 907 (footnote omitted). We found no evidence of bad faith on the part of the employer when making the advances, despite the outstanding garnishment notices. *Id.*

In its findings and conclusions, the superior court found that Mortenson-Neal met its burden of showing that a fraudulent conveyance had been made by NGC to JDL and that on March 27, 1985, Steenmeyer owed NGC monies in excess of the judgment. The court did not specifically address whether or not Steenmeyer had, in good faith, paid the monies owing to NGC to JDL pursuant to the alleged assignment of assets. Steenmeyer alleges that it acted in good faith and that the trial court erred in its ruling in favor of Mortenson-Neal.

Steenmeyer concedes that the transfer was fraudulent for purposes of the appeal, but alleges that it owed no money to NGC at the time of the levy and that it was under no obligation to pay Mortenson-Neal until the court order of June 13, 1985. It vigorously argues that it relied on the February 21, 1985 notice of assignment in good faith and therefore should not be liable for the garnishment. It also argues that "[t]he losses sustained by Mortenson-Neal were the sole result of the lack of diligence by Mortenson-Neal." It reasons that Mortenson-Neal's "delay" of "approximately three months" in obtaining an order from the court directing Steenmeyer to remit the $61,518.88 was the cause of its loss.

Ultimately Steenmeyer argues that *Anchorage Helicopter* requires that Mortenson-Neal bear the burden of proving that Steenmeyer acted in bad faith. Steenmeyer mischaracterizes *Anchorage Helicopter*. The *Anchorage Helicopter* court explicitly held that the *garnishee* bore the burden of an affirmative defense "such as [garnishee's] asserted right of offset to wages due [the judgment debtor] by reason of advances made by [garnishee] to pay some of [the judgment debtor's] other creditors." 417 P.2d at 906.

■ Implicit in the trial court's finding that Steenmeyer owed NGC a debt on the date of the service of the writ is a finding that Steenmeyer failed to meet its burden to prove its affirmative defense: its good faith belief that a valid assignment existed.[8] This comports with *Anchorage Heli-*

8. Even though the trial court made no explicit findings on the good faith issue, the record is

*copter* which requires the garnishee to prove its affirmative defense, here a good faith reliance on a valid assignment.

■ While Steenmeyer indicates that it would have been liable to JDL had it not paid it the money it owed, it fails to recognize not only the provisions of AS 09.40.-040, which protect third parties from liability, but also the interpleader provisions of Alaska Rule of Civil Procedure 22. Civil Rule 22 contemplates precisely the type of situation now before the court. It provides:

> Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. It is not ground for objection to the joinder that the claims of the several claimants or the titles on which their claims depend do not have a common origin or are not identical but are adverse to and independent of one another, or that the plaintiff avers that he is not liable in whole or in part to any or all of the claimants. A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim. The provisions of this rule supplement and do not in any way limit the joinder of parties permitted in Rule 20.

In discussing the analogous federal rule, Professors Wright, Miller and Kane state:

> Another common situation ... is a disputed garnishment or attachment proceeding. The benefits to a garnishee of interpleader relief are obvious. He is able to extinguish his liability both to all the garnishors and the person to whom he is obligated in a single proceeding....

7 C. Wright, A. Miller, and M. Kane, *Federal Practice and Procedure* § 1705, at 511 (1986).

Although Steenmeyer may not have eagerly sought to incur legal fees to ascertain his obligations, his failure to do so when over $61,000 was at stake may have been folly.

### B. *Attorney's Fees*

■ Steenmeyer alleges that the trial court erred in awarding Mortenson-Neal $17,500 in attorney's fees as the prevailing party. As Steenmeyer recognizes, an award of attorney's fees is within the discretion of the trial court. Alaska Rule of Civil Procedure 82(a) grants the trial court discretion to award fees in excess of the rule's schedule. We will not reverse a fee award unless the trial court has abused that discretion. *Malvo v. J.C. Penney Co.*, 512 P.2d 575, 587 (Alaska 1973). Such an abuse will be found where the trial court's award is "manifestly unreasonable." *Id.*

The trial court awarded approximately 75% of the $22,905 in actual fees claimed by Mortenson-Neal. The court found that the Rule 82(a) schedule "would not be adequate to compensate [Mortenson-Neal] for its efforts as the money judgment is not an accurate criterion for determining the fee award." The trial court further found Steenmeyer's defense to border on the frivolous. It stated:

> Its early failure to provide complete information regarding its relationship with NGC/JDL, and its resistance to depositing money in the court registry was unreasonable. Its undisclosed indemnity agreement misled the court and undoubtedly encouraged the prolonged defense litigation by Steenmeyer that followed.

replete with evidence that Steenmeyer acted in contravention of the writ of execution. First, it is unclear from Steenmeyer's testimony whether he or his office was aware of the assignment prior to the service of the writ. He testified that he became aware of the assignment during the conversation with Braunschweig following the service. Second, he was apprised by Mortenson-Neal's attorneys shortly after the writ was served that they believed the assignment was

fraudulent and he assured them he would retain sufficient funds. Third, it was only after threats from Braunschweig that contracts would be cancelled and Braunschweig's assurances that Steenmeyer was not legally liable to comply with the writ that Steenmeyer chose to pay JDL. Finally, Steenmeyer only chose to pay JDL upon receipt of an indemnification contract from Braunschweig.

As we recently stated in *Crook v. Mortenson-Neal*, 727 P.2d 297 (Alaska 1986) where the same trial court awarded Mortenson-Neal 80% of its actual fees:

> the superior court was in the best position to evaluate the defendants' demeanor and credibility. We, therefore, defer to the court's view as expressed in [its] finding.

*Id.* at 306. We will also defer here to the trial court's judgment in awarding Mortenson-Neal 75% of its actual attorney's fees. The court did not abuse its broad discretion.

The trial court is, therefore, AFFIRMED.