221 N.J. Super. 532 (1987)
535 A.2d 35
PAUL GALPEN, PLAINTIFF,
v.
SHARON GALPEN, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Essex County.
Decided July 22, 1987.
*533 Neil B. Fink, for Sharon Galpen (Fink & Fink, attorneys).
Stanley L. Geftic, for Paul Galpen.
Thomas M. Bachman, for Essex County Probation Department.
WEISS, J.S.C.
Plaintiff-husband and defendant-wife were divorced in 1981. Two children were born of their marriage. In the final judgment of divorce entered on January 5, 1981 a written property settlement agreement ("PSA") dated December 11, 1980 was incorporated into the judgment. The PSA obligated plaintiff-husband to pay child support of $120 a week for the two children, as well as certain other delineated expenses. In 1979 plaintiff's income was $52,317 from his employment in a business controlled by defendant's family. In addition to being an employee, plaintiff also became a shareholder in that business.
*534 In 1984, three years subsequent to the divorce, plaintiff declared bankruptcy. At that time plaintiff had been employed by a competitor of his former employer. As a result of litigation between plaintiff and his former employer, who alleged that plaintiff had violated a covenant-not-to-compete, plaintiff gave up his stock interest in his former employer. Plaintiff's employment with the competitor terminated in 1985 as a result of adverse business conditions. Plaintiff then obtained other employment which terminated in 1985 as a result of a reorganization of that employer.
In March 1986 plaintiff became associated with Total-Tel USA, a division of Mansol Ceramics Company, ("Total-Tel") as a self-employed independent contractor for Total-Tel's long distance service. The uncontradicted record is that plaintiff, as an independent contractor, receives no salary or wages from Total-Tel; he is compensated for his efforts strictly and solely on a commission basis. Total-Tel, in recognition that it would take some time for plaintiff, a new comer to the communication industry, to obtain a large volume of business for it, gave him a weekly advance known as "Chargeable Draw Against (Future) Commissions." As set forth in certifications filed by Total-Tel's officers, this would allow plaintiff to realize predictable personal revenue while at the same time incurring debt to Total-Tel chargeable against future commissions. Plaintiff's debt to Total-Tel became his contractual obligation when, during the first week of his association with Total-Tel, plaintiff signed a guarantee to repay his indebtedness out of future commissions. According to Total-Tel this relationship has been and continues on a strictly voluntary basis.
In June 1986 defendant (improperly designated as plaintiff in the moving papers) filed a motion to enforce litigants rights and to compel plaintiff (improperly designated defendant) to comply with his obligation of child support, fix the arrears on account of nonpayment of child support and order income withholding pursuant to N.J.S.A. 2A:17-56.1. On July 1, 1986 an order was entered adjudging plaintiff to be in arrears on account of child *535 support and directing the Essex County Probation Department to proceed with income withholding from defendant's earnings.
In November 1986 Total-Tel received a notice to "payor" of income withholding from the Essex County Probation Department ("Probation Dept."). Total-Tel wrote to Probation Department that plaintiff was not an employee but an independent contractor. According to certifications filed on behalf of Total-Tel, it believed that because plaintiff was not an employee, the notice from the Probation Dept. was not applicable to it insofar as the relationship between Total-Tel and plaintiff was concerned. On March 31, 1987 the Essex County Office of Child Support Enforcement filed a motion to compel Total-Tel to make payments pursuant to the income withholding notice served upon it.
Subsequent to the filing of the motion by the Essex County Office of Child Support Enforcement, plaintiff filed a notice of motion for a reduction of child support and the amount of the outstanding arrears. Certifications in support of, and in opposition to, plaintiff's motion were filed with the court and, subsequent to oral argument, the court entered an order reducing plaintiff's support obligation from $120 a week to $100 a week, effective June 9, 1987, but denied plaintiff's motion to reduce the outstanding arrearage on his support obligations. The only issue left open was that of Total-Tel's obligation to comply with the income withholding notice served upon it by the Essex County Probation Department. For the calendar year 1986, Total-Tel advanced plaintiff $23,178, while his commissions for the same period were $5,050, leaving a debt due by plaintiff of $18,128. As of June 17, 1987, Total-Tel had made advances totaling $8,302, while commissions earned equalled $7,045, or a difference of $1,257.
Total-Tel first contends that under N.J.S.A. 2A:17-51 only if it is indebted to plaintiff for wages can it be obligated to make any payments pursuant to the notice of income withholding it received in November 1986. Second, it contends that plaintiff is *536 indebted to it for the advances made since his association with Total-Tel and therefore under N.J.S.A. 2A:17-53 it is not obligated to pay anything to the Probation Department. The court will deal with those issues in the order contended by Total-Tel.
Initially, it should be pointed out that Total-Tel misconceives the nature of the claim being asserted against it. The notice of income withholding was not served upon it pursuant to N.J.S.A. 2A:17-50 et seq., which relates to execution against wages to satisfy judgments. The present proceedings by the Office of Child Support Enforcement is brought pursuant to the Support Enforcement Act of 1985 ("1985 act"), N.J.S.A. 2A:17-56.7 et seq., which amended the New Jersey Support Enforcement Act which had been enacted in 1981 ("1981 act"), L. 1981, c. 417. The 1981 act was passed pursuant to the mandate of part D of Title IV of the Social Security Act adopted by the Congress in 1974 known as the Child Support Enforcement Program, Pub.L. 93-647, 42 U.S.C.A. §§ 651-662. Because of the deficiencies in the original 1974 legislation, in 1984 Congress enacted the "Child Support Enforcement Amendments of 1984" ("CSEA"), Pub.L. 98-378, 42 U.S.C.A. § 651, et seq. Under CSEA, states were required to have in place by October 1, 1985 specified procedures intended to improve child support enforcement or lose federal funds. (For a comprehensive review of the many problems not answered by the earlier 1974 legislation which the Congress attempted to address in CSEA, see U.S. Department of Health and Human Services, A Guide for Judges in Child Support Enforcement (2 ed.); U.S. Department of Health and Human Services, Office of Child Support Enforcement, Remedies Under the Child Support Enforcement Amendments of 1984 (1985).
It was in direct response to CSEA that the 1985 act was adopted. As set forth in the Assembly Judiciary Committee's statement to the 1985 act;
As amended by the committee, this bill, entitled the "Support Enforcement Act of 1985", revises various sections of law in order to ensure New Jersey's statutes are in compliance with the recently enacted federal Child Support *537 Enforcement Amendments of 1984 (Pub.L. 98-378). The bill provides for the following major changes in State law:
 Requires that all court orders for alimony, maintenance and child support, including orders issued before the effective date of this bill shall be enforced by income withholding (current law provides that orders may be enforced by income withholding and only applies to orders issued after 1981 when the law was enacted);
 Provides that income withholding shall begin when support payments are 14 days overdue (current law provides for 25 days);
 Provides that an income withholding may be contested by the obligor only on the basis of "mistake of fact" (current law permits additional bases for contesting the withholding);
 Provides that if an employer does not withhold income of an employee as required, the employer is liable for the amount not withheld (current law does not have this provision);

 Authorizes the court to impose a lien on the real and personal property of an obligor to secure payment of overdue support and permits the court to require that the absent parent post a bond or other security to guarantee payment (current law authorizes the court to require the obligor to give "reasonable security" to ensure payment of support);
 Provides that the State may attach an obligor's homestead rebate to collect overdue support and that support indebtedness takes precedence over other indebtedness (current law does not specify support indebtedness);

 Extends the State income withholding system to include support orders issued in other states when an obligor has income in New Jersey (current law has no provision for this);
 Authorizes the State to notify the child support enforcement agency of another state when a support order has been issued in New Jersey and the obligor has income from that other state (current law has no provision for this);
 Permits the State IV-D agency (in the Division of Public Welfare) to assess interest or late payment fees on a support order which is 30 days overdue (current law has no provision for this);
 Directs the State IV-D agency to make information about overdue support greater than $1,000.00 available to consumer reporting agencies, upon request, and permits the State to make this information available at the State's option when the amount due is less than $1,000.00 (current law has no provision for this); and
 Directs the Supreme Court to adopt by court rule a system for expediting child support cases as required by federal law. [Emphasis supplied]
Under the 1985 act every order of a court for child support payments shall be enforced by an income withholding against "income from any ... source due the obligor" after the obligor has failed to make a required child support payment *538 that has arrearages accrued in an amount equal to the amount of the support payable for 14 days. N.J.S.A. 2A:17-56.8; N.J.S.A. 2A:17-56.9. N.J.S.A. 2A:17-56.17(g) defines "obligor" as "the absent parent or any other person required to make payments under the terms of a support order for a child, spouse or former spouse," while N.J.S.A. 2A:17-56.17(i) defines "payor" as "any payor of income to an obligor and shall include an obligor's employer." The amendments made by the 1985 act to the 1981 act substituted the term "payor" for "employer." Under N.J.S.A. 2A:17-56.17(a) "income" includes the obligor's commissions, salaries, earnings, wages or other source that may be defined as income. It is thus clear that plaintiff is an "obligor" and Total-Tel is a "payor" subject to the provisions of the 1985 act, N.J.S.A. 2A:17-56.7 et seq.
The notice of income withholding must include a requirement that a payor withhold the amount specified in the notice. N.J.S.A. 2A:17-56.10. Further, an income withholding made under the 1985 act is binding upon the payor and successor payors 14 days after service upon the payor by the Probation Department of a copy of the income withholding. In the certification dated June 17, 1987 filed by Total-Tel, it is acknowledged that plaintiff earned $5,051 in commissions from March 10, 1986 through December 31, 1986 and $7,045 in commissions from January 1, 1987 to June 17, 1987. Since the definition of "income" includes commissions, N.J.S.A. 2A:17-56.17(a), Total-Tel must honor the income withholding against plaintiff's earned commissions unless its second contention is valid.
Total-Tel argues that, even assuming that the notice of income withholding is applicable to it, it was not required to withhold any of the commissions earned by plaintiff because he was indebted to it in amounts in excess of his earned commissions. In essence what Total-Tel is claiming is a right of automatic set-off. A right of set-off exists between two parties each of whom under an independent contract owes an ascertained *539 amount to the other and a claim for payment is made permitting each party to set-off his respective debt by way of mutual deduction against such a claim. Keegan v. Keegan's Estate, 179 N.J. Super. 242, 246 (Ch.Div. 1981); 6 Am.Jur.2d, Attachment and Garnishment, § 372. In fact, under New Jersey statutes a party must exercise a right of set-off in a matter in controversy in litigation or forever lose his right to assert such a claim. N.J.S.A. 2A:15-48. See also R. 4:27-1(b) requiring all claims to be asserted in one action. But see Woodward-Clyde v. Chem. & P. Sciences, 105 N.J. 464, 472 (1987).
Although not in the context of enforcing child support obligations, the question of an employer's right to set-off advances made to an employee against earnings has been dealt with in other jurisdictions. Thus, in Coastal Adjustment Bureau, Inc. v. Hutchins, 229 Or. 418, 367 P.2d 430, 93 A.L.R.2d 992 (Sup.Ct. 1961) the Oregon Supreme Court said:
... Where an employer in good faith advances expense money and a drawing account to a salesman in anticipation of future sales and commission, the employer is not liable to creditors of the employee upon a notice of garnishment returned "nothing owning", so long as the return honestly reflects the state of the account between the parties, and so long as the account between the parties is a bona fide account reflecting transactions directly and necessary connected with the employment relationship. A drawing account is a well recognized modern business method of furnishing the employee with maintenance while he is performing valuable services from which earnings will accrue. [367 P.2d at 432]
See also Anchorage Helicop. Serv. Inc. v. Anchorage W. Hotel, 417 P.2d 903 (Alaska Sup.Ct. 1966); Packard Motors Co. of Alabama v. Tally, 212 Ala. 487, 103 So. 455 (1925); Hoffman Chevrolet v. Washington Cty. Nat. Sav. 297 Md. 691, 467 A.2d 758, 769, (Ct.App. 1983); Annotation, "Garnishment of salary, wages, or commissions where defendant debtor is indebted to garnishee-employer," 93 A.L.R.2d 995 (???). The general rule stated above is subject to the requirement that the debt owed to the garnishee was made in good faith and not to defeat the rights of creditors. Anchorage Helicop. Serv. Inc. v. Anchorage W. Hotel, 417 P.2d at 907. Lack of good faith *540 must be shown in order to defeat the garnishee's right to set off. Ibid.
Like all general rules, the rule relating to the right of set-off is subject to exceptions when strong public policy has been demonstrated or when it would be inequitable to permit the right of set-off to be exercised. See Four G. Corp. v. Ruta, 25 N.J. 503, 512 (1958) in which the Supreme Court, one justice dissenting, refused to allow the purchaser, who had acquired the broker's right to a commission from the seller, to set-off against the purchase price due the seller the amount of the broker's commission on the ground that it would defeat the expectations of the seller.
The Office of Child Support Enforcement argues that to allow Total-Tel to set-off plaintiff's earned commissions against any indebtedness owed by him to Total-Tel would run contrary to the strong public policy of enforcing child support obligations. This court agrees with that position. As seen by the enactment by Congress of CSEA in 1984 mandating specified procedures for improving child support enforcement and the enactment of the 1985 act by our Legislature, enforcement of child support obligations has a high priority in the current scheme of things. This recognition of the strong public policy in the enforcement of support obligations was recently referred to by Justice Sandra Day O'Connor in her concurring opinion in Rose v. Rose, ___ U.S. ___, 107 S.Ct. 2029, 95 L.Ed.2d 599, 55 U.S.L.W. 4630 (1987), a case involving the right of the State of Tennessee to compel a disabled veteran to apply his veteran benefits to pay child support. As pointed out by Justice O'Connor:
Our Anglo-American tradition accords a special sanctity to the support obligation. Unlike other debts, for example, the obligation to support spouse and child is enforced on threat of contempt. These obligations, moreover, may not be discharged in bankruptcy. 11 U.S.C. § 523(a)(5). Indeed, even before the bankruptcy laws specifically excepted the support obligation form the discharge, this Court inferred such an exception, explaining the difference between a support obligation and other debts:

*541 `We think the reasoning of [Audubon v. Shufeldt, 181 U.S. 575 [21 S.Ct. 735, 45 L.Ed. 1009] (1901)] recognizes the doctrine that a decree awarding alimony to the wife or children, or both, is not a debt which has been put in the form of a judgment, but is rather a legal means for enforcing the obligation of the husband and father to support and maintain his wife and children. He owes this duty not because of any contractual obligation or as a debt due from him to the wife, but because of the policy of the law which imposes the obligation upon the husband. The law interferes when the husband neglects or refuses to discharge this duty and enforces it against him by means of legal proceedings.
....
The obligation continues after the discharge in bankruptcy as well as before, and is no more than the duty devolved by the law upon the husband to support his children and is not a debt in any just sense. Wetmore v. Markoe, 196 U.S. 68, 74-76 [25 S.Ct. 172, 174-75, 49 L.Ed. 390] (1904)' Particularly relevant is the fact that the common law generally will not enforce similar anti-attachment provisions against a family-member's claim for support.
....
In short, the support obligation has always been granted a special place in our law. [___ U.S. at ___, 107 S.Ct. at 2041]
That society places a high value on the enforcement of support obligations against parents can be seen from the waiver of sovereign immunity by the United States to permit garnishments against monies due from, or payable by, the United States as renumeration to an individual to enforce a parent's legal obligation to provide child support or to make alimony payments. 42 U.S.C.A. § 659. See also Steller v. Steller, 97 N.J. Super. 493 (App.Div. 1967) upholding garnishments against workers' compensation awards to enforce child support orders.
The primary objective of the 1985 act was to improve enforcement of child support obligations. In enacting the 1985 act, our Legislature specifically provided that:
... this income withhold shall have priority over any other withholding without regard to the dates of the other income withholdings. [N.J.S.A. 2A:17-56.10(b); emphasis supplied]
It seems clear that the intent of this provision of the 1985 act was that support indebtedness was to take precedence over a parent's other indebtednesses. It can hardly be doubted that *542 the Legislature has the power to give priority, over all other obligations, to a parent's obligation to support his or her children, including limiting by implication the right of set-off that a debtor of such parent may have against the parent. It is the court's obligation to interpret legislation in accordance with its underlying objectives, Matter of Scioscia, 216 N.J. Super. 644, 652 (App.Div. 1987), in this case to uphold the income withholding Total-Tel was required to make upon receiving the notice from the Essex County Probation Department in November 1986.
Counsel for the county shall prepare an order to be submitted pursuant to R. 4:42-1(b).