H. Von GEMMINGEN, d/b/a
Von's Realty, Appellant,

v.

FIRST NATIONAL BANK OF
ANCHORAGE, Appellee.

No. S–5967.

Supreme Court of Alaska.

Feb. 10, 1995.

Rehearing Denied March 9, 1995.

Brett von Gemmingen, Anchorage, for appellant.

John R. Beard, Anchorage, for appellee.

Before: MOORE, C.J., and
RABINOWITZ, MATTHEWS and
COMPTON, JJ.

*OPINION*

COMPTON, Justice.

A bank held escrow accounts in the names of judgment debtors. The debtors had made assignments of proceeds from their accounts to various creditors. A judgment creditor, H. von Gemmingen, served a writ of attachment on the bank. The bank continued to honor the prior assignments, and charge regular escrow fees for the service. It applied any surplus funds in the escrow accounts to the benefit of the judgment creditor. The judgment creditor challenged the bank's right to continue making payments to the assignee creditors. He asserted that he had the right to the total deposits made to the judgment debtors' accounts, irrespective of the prior assignments. Summary judgment was awarded to the bank. The judgment creditor appeals. We affirm.

I. *FACTUAL AND PROCEDURAL BACKGROUND*

A. FACTUAL BACKGROUND

Mr. H. von Gemmingen obtained a judgment for $92,983.76 against Clint Finstad, Mary Finstad, Quality World Contractors, Inc. (Quality World), Carmel Corp. (Carmel), and Forest Park Hills, Inc. (Forest Park). Mr. von Gemmingen, doing business as Von's Realty, acted as a real estate broker in the sale of the judgment debtors' properties and

was not paid his commission on the sales. On May 6, 1987, Mr. von Gemmingen's agent served a writ of attachment on First National Bank of Anchorage (First National) garnishing[1] all property of the judgment debtors in First National's possession. *von Gemmingen v. First Nat'l Bank of Anchorage*, 789 P.2d 353, 354 (Alaska 1990) (*von Gemmingen I*).

First National administered 144 escrow accounts in the name of the judgment debtors; 125 for Forest Park and 19 for Quality World or Carmel. These are styled "collection" escrow accounts by First National. *See id.* at 355. As the purchasers make payments under installment sales contracts, First National disburses the funds to the judgment debtors under the terms of the escrow agreements. *Id.* In each escrow account, First National holds a deed to the property in favor of the purchasers. When a purchaser fulfills the terms of the installment sales contract, the deed is delivered to the purchaser and the escrow account closed. At various times prior to the levy, the judgment debtors assigned some portion of their interest in all but one of the escrow accounts to various creditors, who incidentally included both Mr. von Gemmingen and First National. First National received notice of all of the judgment debtors' assignments to the creditors prior to Mr. von Gemmingen's service of the writ of attachment.

First National originally argued that the judgment debtors' contractual right to receive funds pursuant to the escrow agreements was not property subject to attachment. *Id.* at 355. Therefore, in response to the writ of attachment First National answered that it possessed no property of the judgment debtors.[2] In *von Gemmingen I*, this court disagreed: "[W]e hold that 'property' liable for execution includes not only funds within named escrow accounts, but also the rights of and duties owed to judgment debtors pursuant to the terms of those accounts." *Id.* at 355–56. We directed the parties to proceed on remand as follows:

[T]he bank should have transferred the judgment debtors' interest in the named escrow accounts to the peace officer executing the writ. The bank is now liable for the value of . . . any deposits placed in levied accounts after the writ was served, in an amount not exceeding the still unsatisfied portion of the judgment. On remand, von Gemmingen shall be accorded discovery of the contents of the levied accounts, deposits made to those accounts since the date of the levy, and the [judgment debtors'] interests in the levied accounts at the time the writ of execution was served.

*Id.* at 357.

On remand First National provided an accounting as of June 1, 1990.[3] From May 6, 1987 to June 1, 1990, $130,869.32 had been deposited in the escrow accounts. Pursuant to the escrow agreements made before the writ of attachment was served, First National made payments to various creditor assignees and deducted escrow fees totalling $72,409.68. This left $58,459.64 belonging to the judgment debtors: $49,232.23 in Forest Park's escrow accounts and $9,227.41 in Quality World's and Carmel's escrow accounts. The Quality World and Carmel accounts were not complicated by post-levy events. First National paid $9,227.41 less $35.00 to the clerk of court. However, the Federal Deposit Insurance Corporation (FDIC) had indicated it had a claim to the Forest Park accounts. First National re-

---

1. In *von Gemmingen v. First National Bank of Anchorage*, 789 P.2d 353 (Alaska 1990) (*von Gemmingen I*), we noted the confusion in the case law and the civil rules over the use of the terms "attachment," "garnishment," and "execution." *Id.* at 354 n. 2. For the purpose of this opinion, we do not intend any distinction between the terms.

2. In addition to the deeds, 17 of the 19 Quality World/Carmel escrow accounts contained promissory notes originally payable to the judgment debtors. As of the date of attachment, the judgment debtors had assigned to First National their rights under the notes in 16 of these 17 accounts. The note in one account remained payable to the judgment debtors. First National later admitted that this note was attachable property of the judgment debtors and held the note subject to von Gemmingen's levy. *von Gemmingen I*, 789 P.2d at 355.

3. We use the June 1, 1990 numbers throughout this opinion for consistency.

tained the money in these accounts pending the resolution of the FDIC claims.

## B.  PROCEDURAL BACKGROUND

Mr. von Gemmingen moved for summary judgment.  He sought to hold First National liable for the entire unsatisfied portion of his judgment, relying on the fact that "a total of $130,869.32 had passed through the levied accounts since May 6, 1987."  First National opposed summary judgment, noting that it retained only $49,232.23 in funds belonging to the judgment debtors.  It also advised the court that FDIC asserted a competing claim to the funds.

Superior Court Judge Victor Carlson granted Mr. von Gemmingen's motion without explanation, and directed Mr. von Gemmingen to file a proposed entry of judgment.  Mr. von Gemmingen submitted a proposed entry of judgment for approximately $70,000, reflecting the full amount of the unsatisfied judgment minus an interim payment of roughly $10,000.  First National opposed entry of the proposed judgment.  It moved for reconsideration of the original grant of summary judgment to Mr. von Gemmingen.  First National continued to assert that it was liable only for the approximately $50,000 it held after payment of pre-levy assignments and escrow fees.

FDIC moved to intervene during the pendency of these motions.  Because FDIC asserted a post-levy assignment as the basis for its claim to the funds, the question of the effect of an assignment again was placed before the court.  Judge Carlson granted FDIC's motion to intervene.  He cancelled a hearing scheduled to consider the motion to reconsider summary judgment and the opposition to the entry of judgment.[4]  However, Judge Carlson's order granting FDIC's motion implicitly acknowledged that assignments, whether pre or post-levy, might affect the debtors' interest in the account.

After FDIC's intervention, First National interpled Mr. von Gemmingen and FDIC, and moved for summary judgment, offering to deposit the disputed amount with the court.  The FDIC did not oppose this motion, but Mr. von Gemmingen did.  He continued to assert that First National was responsible for the entire unsatisfied portion of the debt owed by the judgment debtors.  Superior Court Judge Dana Fabe, to whom the case had been reassigned, granted First National's motion.  First National submitted the disputed funds to the court.  Mr. von Gemmingen's motion for reconsideration was denied without comment.

Mr. von Gemmingen was completely victorious in his litigation with the FDIC.  The FDIC appealed, but the appeal has since been dismissed.  Mr. von Gemmingen now appeals Judge Fabe's grant of summary judgment to First National in the interpleader.

## II.  *DISCUSSION*

The parties agree that the court should apply its independent judgment to this case.  *See Summers v. Hagen,* 852 P.2d 1165, 1168–69 (Alaska 1993); *Langdon v. Champion,* 745 P.2d 1371, 1372 n. 2 (Alaska 1987).  In order to sustain the grant of summary judgment, we must conclude that the evidence, viewed in the light most favorable to Mr. von Gemmingen, the non-moving party, does not allow for a dispute of material fact, and that First National is entitled to summary judgment as a matter of law.  *See Husky Oil N.P.R. Operations, Inc. v. Sea Airmotive, Inc.,* 724 P.2d 531, 533 (Alaska 1986).

## A.  A JUDGMENT CREDITOR MAY RECOVER FROM A GARNISHEE ONLY TO THE EXTENT OF THE JUDGMENT DEBTORS' INTEREST.

■ Each party emphasizes different language from *von Gemmingen I.*  Mr. von Gemmingen focuses on the statement, "The

---

4.  Judge Carlson never ruled explicitly on the motion for reconsideration.  Mr. von Gemmingen's only support for the proposition that the motion was denied is a reference to First National's motion for reconsideration.  Because First National's motion was filed more than 10 days after the grant of summary judgment, and was therefore untimely under Alaska Civil Rule 77(k), Mr. von Gemmingen apparently believes that the motion was denied by operation of the rule.  This was not the case.

bank is now liable for the value of … *any deposits placed in levied accounts* after the writ was served, in an amount not exceeding the still unsatisfied portion of the judgment." *von Gemmingen I*, 789 P.2d at 357 (emphasis added). Mr. von Gemmingen claims that First National must pay him the lesser of the $130,869.32 "placed in the levied account" and the unsatisfied debt owed him. Antithetically, First National concentrates on the statement, "A valid levy subjects the *judgment debtors' full interest* in such accounts to execution." *Id.* at 356 (emphasis added). First National claims that the "judgment debtors' full interest" is that portion remaining after payments from escrow accounts to prior creditor assignees and charges for servicing the escrow accounts.

First National's interpretation of *von Gemmingen I* is persuasive. The decision allowed and directed discovery into three different aspects of the escrow accounts: (1) the "contents" of the accounts; (2) the "deposits" made into the accounts since the levy date; and (3) the judgment debtors' "interests in the levied accounts at the time the writ of execution was served." *Id.* at 357. This distinction between contents and deposits versus the judgment debtors' interest in the account was a recognition that the judgment debtors may not have a right to all of the money deposited to the account. *von Gemmingen I* also suggests that the extent of the judgment creditor's interest should be measured by the judgment debtors' interest in the account. *Id.* at 356 n. 9. This is simply another way of saying that the judgment creditor may attach only property actually owned by the judgment debtor.

Although the parties do not cite any case law directly on point, *Wittmayer v. Edwards,* 99 Or.App. 136, 781 P.2d 866 (1989), is relevant to our consideration. Wittmayer was the personal representative of a decedent's estate. *Id.* 781 P.2d at 867. The estate was the beneficial owner of an escrow account established to collect and pay to the estate the monthly installments from a land sale contract. *Id.* Wittmayer made a revocable assignment of all rights to the proceeds of the escrow account to first assignees, who in turn made a revocable assignment to second assignees. *Id.* at 868. Edwards obtained a judgment against the estate and served a writ of garnishment on the escrow holder. *Id.* at 867. The court upheld the assignments and exempted the escrow holder from the attachment. *Id.* at 869. In its opinion, the court summarily accepted the conclusion that a valid assignment exempts the assigned portion of the account from the effect of a subsequent attachment by judgment creditors.

We are persuaded that the contractual basis of escrow accounts and public policy reasons support First National's position. In collection escrow accounts, the purchasers send payments to First National pursuant to the terms of the installment sales contract. Whether this is viewed as a trust or a simple contractual relationship, the rights and duties of the parties are defined by the agreement. Under a trust analogy, First National holds legal title under the terms of the trust agreement and the judgment debtors own equitable title to the funds. Under a contract analogy, First National holds title to the funds subject to a contractual obligation to transfer them to the judgment debtors. Under either analogy, the interest of the judgment debtor in the escrow accounts is defined by the escrow agreement and any modifications to that agreement. A valid prelevy assignment of the right to receive escrow payments is a modification of the escrow agreement. Thus, assignments modify the judgment debtor's interest in the account. Mr. von Gemmingen's argument that everything deposited into an escrow account is the property of the original judgment debtor ignores the fact that the judgment debtors' interest is created and governed by the escrow agreement and any modifications of that agreement.[5]

---

5. The Kansas Supreme Court has articulated two general rules to be observed in garnishment cases. The first rule applying to the assignment question states that "the creditor takes the place and stands in the shoes of his debtor, taking only what the latter could enforce." *Harpster v. Reyn-* *olds,* 215 Kan. 327, 524 P.2d 212, 215 (1974). The second rule which pertains to the propriety of deducting the escrow fees states:

> Ordinarily a claim acquired by the garnishee against the principal debtor after the service of the garnishment proceedings cannot be made

There are also sound policy reasons for rejecting Mr. von Gemmingen's position. Allowing a judgment creditor to nullify a prior, good faith assignment of rights under an escrow agreement would discourage business persons from accepting such assignments in business transactions. Allowing the judgment creditor to preempt a bank's receipt of earned escrow fees would make banks less likely to serve as escrow agents.

### B. FIRST NATIONAL MET ITS BURDEN OF PROOF; MR. VON GEMMINGEN DID NOT MEET HIS BURDEN OF PRODUCTION.

■ Although we have articulated a two-step approach to garnishment cases which by its terms shifts the burden of proof between the judgment creditor and garnishee, it is unclear from the case law which party bears the burden of proof in the second stage of these cases. We have held consistently that (1) a judgment creditor bears the burden of showing that the garnishee has property of the judgment debtor, and (2) the garnishee has the burden of proving an affirmative defense to the garnishment action. *von Gemmingen I*, 789 P.2d at 355; *Steenmeyer Corp. v. Mortenson–Neal*, 731 P.2d 1221, 1225 (Alaska 1987); *Anchorage Helicopter Serv., Inc. v. Anchorage Westward Hotel*, 417 P.2d 903 (Alaska 1966).

One legally cognizable affirmative defense is that the garnishee paid the disputed money under "a good faith reliance on a valid assignment." *Steenmeyer Corp.*, 731 P.2d at 1226. However, an examination of *Steenmeyer Corp.* and *Anchorage Helicopter* reveals a confusion about which party ultimately must bear the burden of proof on the question of "good faith reliance."

In *Anchorage Helicopter*, a judgment creditor garnished an employee's wages and the employer asserted a set-off for previous advances granted to the employee.[6] 417 P.2d at 905. The judgment creditor proved that the employer had property of the employee, *i.e.,* a contractual right to wages belonging to the employee. The employer then proved that this contractual right had been assigned to the employer prior to service of the levy. Arguably we held that the judgment creditor then had the burden of showing that the assignment was made in bad faith. *Id.* at 907–08 ("Lack of good faith must in some manner be shown by the evidence. No such showing was made here.")

In *Steenmeyer Corp.*, judgment was entered against a construction subcontractor. *Steenmeyer Corp.*, 731 P.2d at 1222–23. A general contractor owed a debt to the subcontractor for work on a prior construction job. Knowing that this debt could be attached, the subcontractor created a sham corporation and assigned to the sham corporation its right to receive the debt. The judgment creditor served the general contractor with a writ of execution, garnishing the debt. The general contractor responded that it no longer owed a debt to the subcontractor because there had been a pre-levy assignment of rights to the sham corporation. We held that the judgment creditor had proved that the garnishee (the general contractor) had property (a debt) of the subcontractor. We held that the burden remains on the garnishee to show that any disputed money distributed to third-parties was made in good faith. *Id.* at 1225. We concluded that the general contractor had not met this burden. *Id.*

The decisions in *Steenmeyer Corp.* and *Anchorage Helicopter* are difficult to reconcile. We attempted to do so in *Steenmeyer Corp.*

"[The garnishee] argues that *Anchorage Helicopter* requires that [the judgment creditor] bear the burden of proving that [the garnishee] acted in bad faith. [The garnishee] mischaracterizes *Anchorage Helicopter*. The Anchorage Helicopter court explicitly held that the *garnishee*

---

available as a setoff. However, there is an exception to the rule where the garnishee's claim arises out of the very contract upon which his liability to the principal debtor accrued. *Id.*

6. Viewed in the terminology of the present case, the garnishee (employer) was asserting that the judgment debtor (employee) had made a pre-levy assignment of a contractual right (wages) to the garnishee (employer).

bore the burden of an affirmative defense...."

*Steenmeyer Corp.*, 731 P.2d at 1225.

■ Reconciliation of these cases lies in the distinction between the burden of production and the burden of persuasion. The garnishee always has the ultimate burden of persuasion when asserting an affirmative defense. However, as is the case here, the judgment creditor may have a burden of production as to an element of the garnishee's defense. For example, First National must show that it acted on a good faith belief in the validity of assignments and rights to escrow fees. Mr. von Gemmingen would take this a step further, and require First National to make a detailed proof of the actual validity of the assignments, disproving any inference of fraud or bad faith. However, he has never produced any evidence of fraud or bad faith in the assignments, or even alleged fraud or bad faith. Mr. von Gemmingen had the burden to produce evidence of fraud or bad faith before compelling First National to refute the charge in detail. Drawing all inferences in Mr. von Gemmingen's favor, we cannot find that he has presented any evidence from which we can infer that there is a genuine issue of material fact regarding First National's good faith reliance on the validity of the assignments and escrow fees.

Under *Steenmeyer Corp.*, First National had the burden of showing that funds from the escrow accounts were disbursed "under a good faith reliance on a valid assignment." *See id.* at 1226. First National has met this burden. At numerous points in the record, First National presents accountings of the escrow holdings, listing the date of the assignment, the name of the assignee, and the amounts distributed to the assignee or retained as escrow fees.

## III. *CONCLUSION*

On this record, First National acted responsibly as a garnishee under levy. First National paid funds to assignee creditors whose assignments were received before the levy, and deducted fees for servicing the escrow accounts. Otherwise, it retained the funds subject to the levy for the benefit of Mr. von Gemmingen. The judgment of the superior court is AFFIRMED.

EASTAUGH, J., not participating.